UNIVERSAL ATHLETIC SALES CO., a corporation, Appellant,

v.

AMERICAN GYM, RECREATIONAL & ATHLETIC EQUIPMENT CORPORATION, INC., et al.

No. 76–1023.

United States Court of Appeals, Third Circuit.

Argued Sept. 9, 1976.

Decided Nov. 19, 1976.

As Amended Dec. 30, 1976.

---

Robert D. Yeager, Robert DeMajistre, Pittsburgh, Pa., Lewis M. Dalgarn, Los Angeles, Cal., for appellant; Nilsson, Robbins, Dalgarn & Berliner, Los Angeles, Cal., of counsel.

Thomas H. Murray, Pittsburgh, Pa., Hymen Diamond, Monroeville, Pa., for appellees.

Floyd B. Carothers, Pittsburgh, Pa., for appellee, Donald E. Pinchock.

Before ADAMS, ROSENN and GARTH, Circuit Judges.

### OPINION OF THE COURT

ADAMS, Circuit Judge.

At issue in this case is the validity of a United States patent [1] that pertains to a weight-lifting apparatus. Originally granted to Harold Zinkin, the patent was owned by Universal Athletic Sales Co. at the time of suit. The patent consists of eight claims, and the district court struck down two of them on grounds of anticipation and obviousness.[2] We must decide whether these rulings were warranted.

Two issues underlie the basic question of patent validity now before the Court. The first concerns the controlling weight accorded by the trial judge to the testimony

---

1. United States Letters Patent No. 2,932,509 for "Body Exercising Apparatus," issued on April 12, 1960.

2. The original opinion of the district court is reported at 397 F.Supp. 1063 (W.D.Pa.1975). That opinion subsequently was amended, and the amended judgment is set forth at 397 F.Supp. at 1074.

of defendants' principal expert witness, an associate in the law firm representing two of the defendants. Assuming that such testimony deserved little or no weight, as plaintiff maintains, we must then decide the second issue, whether there was nonetheless evidence sufficient to support the decision of the district court.

## I.

Modern technology has, of course, pervaded almost every province of human endeavor. The Zinkin patent demonstrates the verity of this postulate, for its deals with a somewhat unusual activity—weightlifting. Specifically, the patent relates to the chest-press exercise, one of the cornerstones of the bodily arts. As athletes and physical fitness enthusiasts well know, the chest press enables the zealous practitioner to develop the musculature of his upper torso. Like many modern advances, the Zinkin patent attempts to retain the advantages of old methods, while conferring added benefits with the new.

In the traditional chest press, the exerciser lies on a bench and raises a free barbell from his chest to a position in which his arms are fully extended. He raises and lowers the barbell for as long as he desires or is able. The exercise requires the continuing assistance of another person, the "spotter." Not only must the spotter hand the barbell to the exerciser at the inception of the routine, but he must also attempt to retrieve the bar should it begin to totter. Occasionally, the spotter is unable to catch the barbell so that it falls upon the exerciser, causing injury that can be quite serious.

The patent in this appeal discloses an apparatus which permits an exerciser to simulate, safely and effectively, the chest press exercise.[3] To use the patented apparatus, the exerciser lies upon a table in a supine position and pushes against handles in an upward movement. These handles shift in an arcuate fashion, analogous to the movement of the bar in the chest press exercise. They extend from a box-like structure which supports and contains the lifting mechanism. The design of the apparatus is such that the handles, the attached bar and the weights cannot strike the exerciser even should he falter. In addition, the Zinkin machine may be utilized without the assistance of a spotter. The patented apparatus thus eliminates the safety hazards posed by the conventional chest press and obviates its manpower requirements as well.[4]

**3.** The claims of the Zinkin patent that are contested by the defendants contain the following descriptions:

"3. A body exercising apparatus comprising an elongated substantially horizontal table having a predetermined head end and a foot end, an elongated bar extended from the head end of the table in substantial alignment therewith and having an end adjacent to the table and an opposite end, means pivotally mounting the extended end of the bar for pivotal movement about a substantially horizontal axis transversely of the table and in spaced relation to the head end thereof whereby elevational movement of the bar causes the end thereof adjacent to the table to describe an arc with its concave side disposed toward the table, a pair of handles aligned transversely of the table, means rigidly mounting the handles on the bar for integral pivotal movement therewith, stop means engageable with the bar limiting downward travel of the handles to positions in upwardly spaced relation to the table, and means connected to the bar resistive to upward pivotal movement thereof."

"4. A body exercising apparatus comprising an elongated substantially horizontal table adapted to support a person in supine position thereon having a predetermined head end and foot end, a framework adjacent to the head end of the table, an elongated bar pivotally mounted in the framework in substantial alignment with the table for movement about a substantially horizontal axis transversely of the table in spaced relation to the head end thereof and said bar being extended toward the table, a pair of handles rigidly mounted on the bar and disposed on opposite sides of the head end of the table, said bar terminating short of the table and leaving the area above the head end thereof free from obstruction, adjustable weight means borne by the bar, and a stop mounted in the framework engageable with the bar limiting downward pivotal movement thereof to a position with the handles disposed at an elevation above the table."

**4.** The problems inherent in the simple chest press exercise had spurred several previous attempts at improvement. *See* Brief of Appellants, at 10–14. The "cradle" device, for exam-

This action was initiated by Universal against the defendants as part of a complex litigation involving, *inter alia*, questions of patent infringement, unfair competition, copyright infringement and antitrust violations. When Universal alleged patent infringement in its complaint, the defendants pleaded invalidity of the patent itself. The district court severed the patent infringement and unfair competition issues for trial,[5] and the patent issue, alone, is before us on appeal. After a nonjury trial, the district court initially adjudged the Zinkin patent entirely invalid. However, an amended order vacated the earlier judgment, leaving as invalid patent claims numbered 3 and 4.

Defendants had developed a body-exercising apparatus very similar to that covered by the Zinkin patent. Indeed, the district court found that "the defendants' chest press apparatus would infringe the Zinkin patent if the Zinkin patent were not . ." invalid.[6] In their briefs, defendants list several differences between their own device and that of Zinkin. Nevertheless, the defendants do not vigorously contest the determination of infringement by the trial judge. Instead, they rely solely upon his ruling of invalidity, and attempt to buttress his analysis in this respect. At trial, as in the appeal now before us, the primary focus was on whether the Zinkin patent was "anticipated" or made "obvious" by the prior art.

Two references were relied upon by the district court in holding the Zinkin claims invalid: a patent issued to C. A. Simmons in 1871[7] and a magazine photograph, dated 1950, of a lifting machine designed by Sam Loprinzi.[8] Disclosing a lifting machine for "developing the muscular system," the Simmons device consists of weighted levers which the exerciser apparently lifts and lowers as part of the exercise. The Loprinzi machine is described in the photograph caption as a "super-duper pressing apparatus," but the magazine caption itself provides no information as to the features of the device or how it was to be used. Defendants' principal expert witness attempted to explain its features based solely on his examination of the photograph.

That expert was Firman Lyle, an associate lawyer in the law firm that represented several of the defendants.[9] Controlling weight was given by the district court to his testimony as to obviousness and anticipation: "The court chooses to adopt the view of defendant's expert Firman Lyle."[10] Relying on the Simmons patent, the Loprinzi photograph, and Mr. Lyle's testimony as to these references, the trial court concluded that the two central claims of the Zinkin patent are void, since they were anticipated and made obvious by prior art.

For reasons to be discussed in this opinion, we have decided that the judgment of the district court must be vacated.[11]

ple, utilized a rack which held the barbell at the beginning and end of the exercise. This primitive apparatus, however, did not eliminate the need for a spotter during the course of the exercise. Moreover, the cradle device was unstable and often flipped over, injuring the exerciser, his spotter or others. Subsequent improvements included the "power rack" and the "verti-slide." While these advances remedied the dangers posed by the chest press, their protective features often proved disruptive to the exercise routine. Consequently, prior to the Zinkin patent, many devotees of the chest press continued to use the free barbell in spite of its perils, inconvenience and added expense. The district court did not consider these primitive improvements as "prior art" with respect to the Zinkin apparatus, nor do any of the defendants.

5. For a report on the related proceedings, see the original district court opinion, 397 F.Supp. at 1065 and n.1.

6. 397 F.Supp. at 1070–71.

7. Patent No. 117,339, dated July 25, 1871, for a "Lifting Machine."

8. The photograph appeared in *Strength and Health* Magazine, May–June 1950, at 50.

9. *See* Appendix at 280 (Trial Transcript at 383).

10. 397 F.Supp. at 1070.

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), for the district court below, in effect, denied an injunction against further infringement. It may be that we also possess jurisdiction pursuant to 28 U.S.C. § 1292(a)(4), which authorizes an appeal from a district

## II.

For the district court to have granted controlling weight to the testimony of Mr. Lyle constituted error for two reasons. First, because Mr. Lyle's qualifications as an expert are questionable, at least insofar as this litigation is concerned, the trial judge erred in according great weight to his opinions. Second, the district court committed error in failing to discount the value of the testimony, given the interest in the litigation of the law firm with which Mr. Lyle was associated.

### A.

Universal first contends that Mr. Lyle's testimony should have been excluded on the ground that he was not an expert with respect to the patent claims at issue here.

▮▮▮ This Court previously has delineated the standard which governs the competency of an expert witness in a particular case. As we noted in *United States v. 60.14 Acres of Land*,[12] an expert witness " 'must have such skill, knowledge and experience in [the] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.' "[13] Ordinarily, the determination of competency of an expert witness rests within the discretion of the trial court.[14] The Supreme Court has posited that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous."[15] It follows that this Court will not interfere with the decision of the district judge as to an expert, absent an abuse of discretion.

▮▮ In considering whether the trial judge should have recognized Mr. Lyle as an expert in this litigation, we must first determine which art is the pertinent one. Universal asserts that the relevant art is weight-training, whereas the defendants and the district court selected mechanical engineering. We doubt whether any mechanical engineer could provide meaningful opinions regarding the devices at issue here. For an engineer to assist the trial judge in his search for truth would require that he have at least some familiarity with body-building machines. At the same time, a mere weight lifter probably would be of marginal assistance to a court in evaluating the design facets of exercise apparatus. Consequently, the art germane to the present case is the design of body-training devices.

Having selected the relevant art, we proceed to consider whether Mr. Lyle possessed the qualifications to be an expert in this case. It is apparent that he had little familiarity with the design of weight-lifting machines prior to the present litigation. The record reveals that Mr. Lyle did not undertake, even in connection with this law suit, any extensive study of technical references with respect to body-exercising apparatus. Rather, his examination was confined to the elements of prior art selected by defendants' counsel, *i. e.,* the Simmons patent and the Loprinzi photograph. As a result, it is doubtful whether he was suited to serve as an expert here.

court judgment in a patent infringement action that is final except for an accounting. *But see* 9 J. Moore's Federal Practice ¶ 110.19[4] (1975). Because we believe that these provisions constitute sufficient grounds for jurisdiction, we did not certify this case for appeal under 28 U.S.C. § 1292(b), as desired by the district court. *See* 397 F.Supp. at 1074. Absent these sources of jurisdiction, however, we would have issued the requisite § 1292(b) certificate because this case raises substantial issues, the resolution of which should materially enhance resolution of this protracted litigation.

12. 362 F.2d 660 (3d Cir. 1966).

13. *Id.* at 667 *quoting Jenkins v. United States,* 113 U.S.App.D.C. 300, 307 F.2d 637, 643 (1962), in turn *quoting* McCormick, Evidence § 13 (1954).

14. *See, e. g., Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313, *reh. denied* 370 U.S. 965, 82 S.Ct. 1578, 8 L.Ed.2d 834 (1962); *United States v. 60.14 Acres of Land,* 362 F.2d 660, 663 (3d Cir. 1966); *Arnold v. Loose,* 352 F.2d 959 (3d Cir. 1965).

15. *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962).

Even assuming that the disciplines designated by the parties were the apposite ones, Mr. Lyle's standing as an expert in this litigation still may be called into question. He had no expertise whatsoever in weight training, as he repeatedly conceded during the course of his testimony.[16] It is also questionable whether Mr. Lyle possessed any skill or knowledge in the field of mechanical engineering. A recipient of a bachelor's degree in *electrical* engineering, he had served for seven years as an examiner in the United States Patent Office and for thirty-five years as a patent attorney for Westinghouse. Although he did handle patent matters relating to turbines, motors and generators, which have mechanical features, his patent work primarily pertained to electrical engineering. Experience may vest one with the qualifications of an expert,[17] but Mr. Lyle had only a limited background even in the province of mechanical engineering.

■ However, since Mr. Lyle may possess skill and knowledge greater than the average layman with respect to mechanical apparatus, we cannot find that the district court clearly abused its discretion in recognizing him as an expert. Nevertheless, coupled with the arguable deficiencies in his qualifications as an expert witness, Mr. Lyle's limited experience with the class of devices present in this litigation should have substantially circumscribed the weight accorded his testimony. The trial court thus erred in attaching controlling weight to the opinions of defendants' expert.

### B.

Universal also challenges the expert testimony of Mr. Lyle, because of the conflict between his association with defense counsel and his role as an expert witness. Over the objection of Universal, the district court permitted Mr. Lyle to testify as an expert.[18]

■ Ordinarily it is inappropriate for an attorney, or a lawyer in his firm, to testify on behalf of a client. Rules DR 5–101 and 102 of the Code of Professional Responsibility [19] provide that a lawyer shall refuse employment or withdraw as counsel if the "lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client. . . ." Under such circumstances, the attorney, or his firm, must decide whether to serve either as advocate or as a witness in a particular case. Recognizing that "the role of an advocate and of a witness are inconsistent . . . ," [20] the Code would appear to preclude the testimony of Mr. Lyle here. As the disciplinary rules logically apply to expert as well as lay witnesses, the law firm should have withdrawn once it decided that its associate would testify, or else the firm should have found another expert.[21]

---

16. *See,* e. g., Appendix at 327, 394–95 (Trial Transcript at 458, 211, 632).

17. *See, e. g., United States v. 60.14 Acres of Land*, 362 F.2d 660, 667 (3d Cir. 1966).

18. *See* Appendix at 273–79 (Trial Transcript at 376–382).

19. The Code of Professional Responsibility was promulgated by the American Bar Association in 1969, and it became effective in 1970. The Pennsylvania Supreme Court explicitly adopted the Code in 1974 for members of the Pennsylvania bar, among whose ranks are Mr. Lyle and defendants' attorneys. *See* Pennsylvania Rules of Court 1975, at 175–241. However, it is apparent that the Code was applicable in Pennsylvania prior to 1974. *See In re Estate of Lohm*, 440 Pa. 268, 278–79, 269 A.2d 451, 457 (1970); Rules of Court, 331 Pa. xxxvi (1938). By contrast, neither the District Court for the Western District of Pennsylvania, which tried the present case, nor this Court has expressly adopted the Code.

20. EC 5–9.

21. The defendants contend that DR 5–101 and 102 do not reach the testimony of Mr. Lyle. An exception to these rules allows a lawyer-witness to continue the representation of his client: "As to any matter, if [withdrawal] would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in a particular case." DR 5–101(B)(4). Defense counsel asserted at trial that this exception permitted the firm to continue its representation of the defendants, even if Mr. Lyle testified as an expert. The law firm contended, and the district court agreed, that withdrawal would cause "substantial hardship" for their clients, as the firm had spent great time and resources in preparing for the case.

Even though the Code inveighs against the participation of a witness in a position comparable to that of Mr. Lyle, it does not necessarily follow that any alleged professional misconduct on his part would in itself render his testimony, once it was adduced, a nullity. This is so because the Code does not delineate rules of evidence but only sets forth strictures on attorney conduct. Moreover, it is well settled that a lawyer is competent to testify on behalf of his client.[22] Of course, such testimony may subject the attorney to separate disciplinary action. Thus, while we do not approve of the practice of an attorney testifying as an expert witness for a client of his law firm, certainly in the absence of some necessity for such testimony, we cannot say that the district court committed error solely by not extirpating that testimony. In so conclud-

ing, we are in accord with the courts of appeals in several other circuits.[23]

In the case at hand, however, the district court did err when it relied so heavily, on the testimony of Mr. Lyle. In *Lau Ah Yew v. Dulles*,[24] the Ninth Circuit, after criticizing the practice of an attorney testifying as a lay witness for his client, declared the testimony competent. But the court noted that the relationship of such a witness to his client detrimentally affected the weight to be accorded his testimony and therefore "discounted" its value.[25] Such an approach, which would appear to be equally applicable to attorneys who serve as experts for their clients, also reflects our view. We believe that, while a district court may in limited circumstances receive the testimony of a lawyer-witness, the value of such testimony must be discounted because of the

Because the action was tried below without a jury, the trial judge could have adjourned the proceedings, without prejudice to the parties or a waste of court resources, until defendants selected another expert or, if they still desired the testimony of Mr. Lyle, another law firm. There is nothing in the record which indicates that the law firm with which Mr. Lyle was associated has such distinctive value in this litigation as to call DR 5–101(B)(4) into play.

Nevertheless, we do recognize that DR 5–101 and 102 are somewhat ambiguous as to whether these disciplinary rules apply literally to Mr. Lyle and his law firm. DR 5–101 and 102 require the withdrawal of an attorney from the conduct of a trial if he or another lawyer in the firm *"ought"* to be called as a witness on behalf of his client. Such language suggests that these sections of the Code were concerned only with the lawyer-witness who has crucial information in his possession which must be divulged. Under this test, Mr. Lyle hardly may be characterized as a witness who "ought" to testify on behalf of his firm's client. Defense counsel could have called any number of other experts to the stand. There is no suggestion in the record, nor could there be, that Mr. Lyle alone possessed the expertise necessary to assist the trier of fact. Because the defendants' expert was not an indispensable witness, arguably his testimony at trial did not breach the mandate of the Code.

**22.** *See, e. g., City Bank of Honolulu v. Rivera Davila*, 438 F.2d 1367, 1369 (1st Cir. 1971); *United States v. Harry Barfield Company*, 359 F.2d 120, 124 (5th Cir. 1966); *United Parts Mfg. Co. v. Lee Motor Products, Inc.*, 266 F.2d 20, 24 (6th Cir. 1959); *Lau Ah Yew v. Dulles*, 257 F.2d 744, 746 (9th Cir. 1958). While three

of these cases were decided before the promulgation of the Code of Professional Responsibility, Canon 19 of the predecessor Canons of Ethics was roughly identical to DR 5–101 and 102. Consequently, the principles enunciated in the pre-Code cases would appear to retain vitality.

Naturally, the statement in the text does not apply where the client invokes the attorney-client privilege, a long-standing rule of evidence. A client may refuse to disclose, and prevent his lawyer from disclosing, confidential communications between the attorney and his client. See 8 Wigmore on Evidence, §§ 2290–2329. (McNaughton rev. 1961). Generally, invocation of the privilege results in the exclusion of the attorney's testimony. The attorney-client privilege even embraces a lawyer not presently in the employ of the client, so long as he was the client's lawyer at the time of the privileged communication. *See* Wigmore, *supra*, § 2323. In the case at bar, the attorney-client privilege obviously was not claimed, and so Mr. Lyle's testimony is not incompetent.

**23.** See cases cited in note 22 *supra*.

It would be appropriate to consider incorporating within the body of evidentiary rules the current disciplinary norm proscribing the testimony of a lawyer for his client. The recently promulgated Federal Rules of Evidence, however, do not render such testimony incompetent. Nor is there any judicial precedent, insofar as we are aware, to support announcement of such a rule at this time.

**24.** 257 F.2d 744 (9th Cir. 1958).

**25.** *See id.* at 746–47.

interest of the lawyer or his firm in the outcome of the litigation.

Here, there is little indication that the district judge, as the sole trier of fact, scrutinized the expert testimony of Mr. Lyle with the proper circumspection.[26] It is one thing for a trial court to give the testimony of an interested witness some weight in reaching a decision. But it is quite another to permit the presumption of patent validity to be rebutted by primary reliance on the testimony of that witness. Even if, in the context of this case, it was not error to permit Mr. Lyle to testify, we conclude that the district court erred when it placed controlling weight, as to patent validity, on the opinions of a lawyer associated with defense counsel.[27]

### III.

Because the district court gave undue weight to the testimony of Mr. Lyle, we must consider whether the remaining evidence in the record is sufficient to sustain the ruling that the patent claims are invalid.

It is a fundamental canon governing judicial consideration in this field that a presumption of validity attaches to patents issued by the United States Patent Office.[28] Not only has a unanimous Supreme Court noted that "patentees are heavily favored as a class of litigants by the patent statute," [29] but this court has stated on several occasions that the burden of proving patent invalidity is a heavy one.[30] Moreover, such invalidity must be demonstrated by "clear and convincing proof." [31] In the case at bar, the evidence as to invalidity, once the testimony of Mr. Lyle is discounted, consists of only two items—the Simmons patent and the magazine photograph of Loprinzi's "super-duper pressing apparatus." This evidence in itself is not adequate to rebut the presumptive validity of the Zinkin patent, or to sustain the lower court's rulings as to obviousness and anticipation.

### A.

We now turn to the ruling of the district court on the issue of obviousness. Al-

**26.** When he refused to disqualify Mr. Lyle as an expert witness, the trial judge did state: "We will permit the witness to testify, but as to what effect this has upon his credibility, that will be up to the court . . . ." Appendix at 278–79 (Trial Transcript at 381–82). Nevertheless, there is no subsequent suggestion in the record that the district court evaluated Mr. Lyle's testimony with the requisite special care.

**27.** In so holding, we express doubt that the heavy presumption of patent validity can be overcome by the testimony of an attorney on behalf of his client. For a discussion of the presumption, see Part III *infra*.

**28.** 35 U.S.C. § 282 provides, in pertinent part: "A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it."

Where the Patent Office specifically has considered references of prior art invoked by a defendant to invalidate a patent, the presumption of validity often is further reinforced. *See, e. g., Ellipse Corp. v. Ford Motor Co.*, 452 F.2d 163, 170 n.6 (7th Cir. 1971), *cert. denied*, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972); *Woodstream Corporation v. Herter's, Inc.*, 446 F.2d 1143, 1156 (8th Cir. 1971); *Tapco Products Co. v. Van Mark Products Corp.*, 446 F.2d 420, 426 (6th Cir.), *cert. denied*, 404 U.S. 986,

92 S.Ct. 451, 30 L.Ed.2d 370 (1971); *cf. Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc.*, 450 F.2d 1164 (3d Cir. 1971). In this case, the Patent Office specifically considered the Simmons patent, as Mr. Lyle noted in his testimony. *See* Appendix at 368 (Trial Transcript at 564). The defendants' expert also stated that the examiner had made a "good search." The precision exhibited by the Patent Office strengthens the presumption of validity accorded the Zinkin claims.

**29.** *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 335, 91 S.Ct. 1434, 1446, 28 L.Ed.2d 788 (1971).

**30.** E. g., *Trio Process Corporation v. L. Goldstein's Sons, Inc.*, 461 F.2d 66, 70 (3d Cir.), *cert. denied* 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972); *Eagle Iron Works v. McLanahan Corporation*, 429 F.2d 1375, 1382 (3d Cir. 1970); *Schmidinger v. Welsh*, 383 F.2d 455, 462 n.10 (3d Cir. 1967), *cert. denied*, 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134 (1968).

**31.** *Trio Process Corporation v. L. Goldstein's Sons, Inc.*, 461 F.2d 66, 70 (3d Cir. 1972). *Cf. Woodstream Corporation v. Herter's Inc.*, 446 F.2d 1143, 1149 n.4 (8 Cir. 1971).

though the trial judge invoked the proper authorities and standards in his consideration of this question, we believe that he erred in applying them to the Zinkin claims.

■ Inasmuch as this Court has adumbrated the precepts of obviousness on previous occasions,[32] we need not do so here. Instead, we enunciate only the analytical framework necessary for this case. Simply stated, a patent may be deemed invalid if it is "obvious." 35 U.S.C. § 103 provides, in part: "A patent may not be obtained . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains."

■ As observed in *Trio Process Corporation v. L. Goldstein's Sons, Inc.*,[33] the most authoritative construction of section 103 appears in *Graham v. John Deere Co.*[34] There the Supreme Court established three mandatory criteria with which to frame judicial determinations as to obviousness: "The scope and content of the prior art . . .; differences between prior art and the claims at issue . . .; and the level of ordinary skill in the pertinent art . . . ."[35] The Supreme Court also set forth several permissive, or "secondary," considerations: "commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."[36] This past term the Supreme Court continued to apply these criteria, thereby indicating the enduring vitality of *Graham*.[37] While the district court, in the present case, specifically considered the three mandatory tests, it erred in its evaluations under these requirements, largely because of the dearth of evidence submitted by the defendants.

■ In analyzing the "scope and content" of the prior art, the trial judge indicated that the only relevant references offered by the defendants were the Simmons patent and the Loprinzi photograph. He properly disregarded exercising machines designed subsequent to the Zinkin patent. Although his opinion does not explicitly discuss the scope of the prior art, the fact that there were only two references suggests that the prior art is quite limited.

■ The trial judge did attempt to examine the content of the Simmons patent and the Loprinzi photograph. It is evident that he relied considerably upon the testimony of Mr. Lyle in analyzing the latter. As Mr. Lyle's testimony must be discounted, the district court would be hard pressed to evaluate the photograph. Even with Mr. Lyle's assistance, the trial judge appeared to be troubled about the features of the Loprinzi device. Indeed, his opinion reflects uncertainty concerning that apparatus.[38] While the Simmons patent may have

32. *See, e. g., Trio Process Corporation v. L. Goldstein's Sons, Inc.*, 461 F.2d 66, 70–73 (3d Cir. 1972); *Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc.*, 450 F.2d 1164, 1172–75 (3d Cir. 1971); *Eagle Iron Works v. McLanahan Corporation*, 429 F.2d 1375, 1377–79 (3d Cir. 1970).

33. 461 F.2d at 70.

34. 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). *See also United States v. Adams*, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

35. 383 U.S. at 17, 86 S.Ct. at 694. Subsequently, the Supreme Court, in referring to these tests, "admonished that 'strict observance' of those requirements is necessary." *Anderson's Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 62, 90 S.Ct. 305, 308, 24 L.Ed.2d 258 (1969).

36. 383 U.S. at 17–18, 86 S.Ct. at 694.

37. *See Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Dann v. Johnston*, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976).

38. *See* 397 F.Supp. at 1069. The trial judge, in discussing the Loprinzi apparatus, stated: "From looking at the picture, it is not clear in what direction the levers can be moved, but the caption 'super-duper pressing apparatus' would clearly indicate to one familiar with weight-training that the movement is vertical. It also appears that each lever moved independently of the other, but that, too, is not certain from the picture and caption."

been more easily examined, since the defendants did produce detailed patent specifications relating to it, there were unanswered questions regarding its content as well. For example, it is unclear whether the described apparatus could be used for the chest-press exercise. In the absence of expert testimony, other than that of Mr. Lyle, the trial judge could not properly appraise the prior art, narrow in scope as it was. Although there may be instances where a trial court may be able to review prior art references without expert assistance, the devices in this litigation do not lend themselves to such evaluation.[39]

The district court also found that the differences between the prior art and the claims at issue were such that the invention is obvious. Nevertheless, because the defendants did not convincingly demonstrate the content of the prior art, we believe that it would be difficult for any court to evaluate differences between that prior art and the challenged claims. Even if it would be possible to do so, there is little evidence to support the conclusion that any variances between defendants' references and the Zinkin claims are "insignificant."

■ We recognize that there *may* be some important differences between the prior art and the Zinkin claims. It is questionable, for example, whether either the Simmons patent or the Loprinzi apparatus obviates the spotter requirement of the chest-press exercise, as does the Zinkin device. The caption of the Loprinzi photograph depicts Sam Loprinzi "coaching a pupil in the use of [the] super-duper pressing apparatus." Arguably, Mr. Loprinzi is acting as a spotter as well as a coach in the picture, just as Harold Zinkin performed both roles in his gymnasium before designing his machine. Moreover, it is unclear whether the Simmons and Loprinzi devices circumvent, as does the Zinkin apparatus, the safety hazards posed by the chest press. Technically, there are various differences in design between the prior art and the challenged claims, involving, *inter alia*, the types of handles, the "stops," the requirement of a single bar and the positioning of numerous elements. While there is some doubt whether the variances between the Zinkin claims and the references are so substantial as to defeat the allegation of obviousness, we conclude that the evidence is insufficient to sustain the conclusion of the trial judge that all differences were such as to render the patented device obvious.

■ With respect to the third mandatory criteria under *Graham*, that is, the level of ordinary skill in the pertinent art, the district court acknowledged that "The record on this point is somewhat deficient."[40] Even so, the trial judge declared that "any competent mechanical engineer . . . could readily create a machine substantially the same as that of plaintiffs."[41] As discussed above, we believe that the pertinent art is neither mechanical engineering nor weight-lifting, but rather the design of body-exercising apparatus. Not only did the district court fail to select the proper art, but it is questionable whether the evidence submitted by the defendants speaks to the level of ordinary skill in the design of weight-lifting devices.

**39.** Ordinarily, the trial judge decides whether he needs expert assistance to understand or evaluate a reference relied on as prior art. Experts are not absolutely required, and a district court may disregard the testimony of experts if that testimony appears unreasonable. *See* Deller's Walker on Patents § 231 (2d ed. 1965) and cases cited therein. Nevertheless, in cases involving complicated inventions, the better rule is that the judge should rely on expert testimony. In *Nyyssonen v. Bendix*, 342 F.2d 531 (1st Cir. 1965), for example, the First Circuit stated: "a patent speaks to its art and what it says can be told in complicated cases like this only by one skilled in the art." *Id.* at 537. Not only are the devices in this litigation somewhat intricate, but the evidence pertaining to them is unclear. We believe that the trial judge should have required the testimony of one skilled in the design of weight-lifting machines before invalidating the Zinkin claims. Even if defendants had produced such an expert, it still is questionable whether the factual proof submitted in this case was sufficient to void the patent.

**40.** 397 F.Supp. at 1070.

**41.** *Id.*

Assuming that mechanical engineering is the relevant art, we are skeptical whether Mr. Lyle, upon whose testimony the district court substantially relied, could provide meaningful opinions thereon, given his inexperience in mechanical engineering. The trial judge suggested that the record as to the level of ordinary skill in the pertinent art was "deficient." Having so indicated, he should have refused to invalidate the challenged patent claims as obvious.

This Court need not consider the permissive, or secondary, criteria mandated in *Graham* for determinations of obviousness. For we are convinced that the defendants failed to provide adequate evidence to justify invalidation of the Zinkin claims under section 103. Even if the permissive tests were applied, the commercial success of the Zinkin machine[42] would reinforce our conclusion, as would the "failure of others" to eliminate the safety hazards and manpower requirements of the traditional chest press exercise.[43] Thus, we cannot say that the Zinkin claims are so obvious as to render them invalid.[44]

### B.

Besides holding the Zinkin claims void for obviousness, the district court concluded that they were anticipated by prior art. 35 U.S.C. § 102 provides, in pertinent part: "A person shall be entitled to a patent unless— (a) the invention was . . . patented or described in a printed publication in this or a foreign country, before the invention

thereof by the applicant for patent. . . ." The defendants had contended, and the trial judge agreed, that both the Simmons patent and the Loprinzi photograph anticipated the Zinkin claims so as to render them nugatory under the statute. Since there is insufficient evidence to rebut the heavy presumption of patent validity, we do not sustain this conclusion of the district court.

In construing section 102, the trial judge apparently viewed the Loprinzi photograph as a "printed publication" which described the Zinkin invention. While neither this Court nor apparently any other tribunal has yet determined whether a photograph in itself constitutes a "printed publication," we believe that a photograph may so qualify for purposes of section 102.[45] In so stating, we reaffirm our pragmatic pronouncement in *Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc.*,[46] that "to restrict our interpretation of Section 102(a)'s 'printed' publication requirement solely to the traditional printing press would ignore the realities of the scientific and technological period in which we live . . . ."[47] With a photograph, one conversant in a pertinent art could make or construct a purported invention without resorting either to the patent or to his own inventive skills. Under certain circumstances, then, a photograph may so anticipate a patent as to render it invalid.

The question remains, however, whether the photograph of Loprinzi's device

---

**42.** 397 F.Supp. at 1066. While the district court expressly recognized the commercial success of the Zinkin chest press machine, it did not utilize this fact in its analysis of obviousness.

**43.** *See* note 4 *supra.*

**44.** Such a holding is not at all inconsistent with *Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc.*, 450 F.2d 1164 (1971). There this Court declared that a trial judge's findings as to the *Graham* criteria are to be evaluated under the "clearly erroneous" standard of Fed.R.Civ. Pro. 52(a). In the case at bar, the requisite findings would appear to be clearly erroneous, as there is insufficient evidence to support

them. Thus the district court's conclusion as to invalidity cannot stand.

**45.** Several courts have held that a *drawing* unaccompanied by verbal description may constitute a printed publication within the meaning of section 102. *See,* e. g., *Des Rosiers v. Ford Motor Co.*, 143 F.2d 907, 911–12 (1st Cir. 1944); *In re Bager*, 47 F.2d 951, 953 (C.C.P.A.1931). A photograph may disclose an invention as well as, if not better than a drawing and, consequently, is a "printed publication" for purposes of the statute.

**46.** 450 F.2d 1164 (3d Cir. 1971).

**47.** *Id.* at 1170.

anticipated those claims of the Zinkin patent that the defendants challenge. We hold that it does not. In *Philips* we specified the circumstances under which a prior publication could anticipate a patent: "For a prior publication to be sufficient to defeat a patent it must exhibit a substantial representation of the invention in such full, clear, and exact terms that one skilled in the art may make, construct and practice the invention without having to depend on either the patent or on his own inventive skills."[48]

In the discussion of obviousness in Part III–A, we commented that it would be difficult, if not impossible, to discern the content of the Loprinzi photograph. That observation is applicable here, for it would not be possible for a trial court to ascertain whether the photograph anticipates the Zinkin invention. The photographic representation of the Loprinzi "super-duper pressing apparatus" hardly is "full, clear, and exact." It is questionable whether one skilled in the design of weight-lifting apparatus could produce the Zinkin device, based on an examination of the Loprinzi photograph. Accordingly, we believe that the magazine photograph is insufficient to render the patent invalid on the ground of anticipation.

Nor can we hold that the Simmons patent anticipated the Zinkin weight-lifting machine. It is unclear whether the Simmons invention encompasses all or substantially all of the elements of the apparatus under scrutiny in this case. The evidence submitted does not reveal whether one skilled in the design of body-exercising devices, or even in mechanical engineering, could develop the Zinkin weight-lifting apparatus based on the Simmons patent or on his own skills. We conclude, therefore, that the defendants in the present case have failed to demonstrate invalidity of the challenged claims under section 102.

## IV.

While the validity of the Zinkin patent is not completely free from doubt, we do not accept the decision reached by the district court. The district court erred in according substantial weight to the testimony of Mr. Lyle. Without such unjustified reliance on that testimony, the trial judge could not properly interpret the prior art. Because the evidence produced by the defendants simply is not sufficient to rebut the presumption of validity accorded patents, we must reverse the rulings of the district court as to obviousness and anticipation, and sustain claims numbered 3 and 4 of the Zinkin patent.

The judgment of the district court will be vacated and the cause remanded for proceedings consistent with this opinion.

**48.** *Id.* at 1169. For similar statements of the "anticipation" standard, see *Eames v. Andrews*, 122 U.S. 40, 66, 7 S.Ct. 1073, 30 L.Ed. 1064 (1886); *Seymour v. Osborne*, 78 U.S. (11 Wall.) 516, 555, 20 L.Ed. 33 (1870); *Rich Products Corporation v. Mitchell Foods*, 357 F.2d 176, 180 (2d Cir.), *cert. denied* 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58 (1966); *Application of LeGrice*, 301 F.2d 929, 936, 49 CCPA 1124 (1962); Deller's Walker on Patents § 60 (2d ed. 1964).