## CIRCUIT COURT OF FAIRFAX COUNTY

Thompson Hirst et al.

v.

Thomas Siegfried et al.

Case No. (Law) 128557

Thomas Siegfried et al.

v.

Lynch et al.

Case No. (Law) 128629

November 9, 1994

BY JUDGE JANE MARUM ROUSH

This case comes before the Court on Defendants' Demurrer in the first suit, and Mr. Hirst's, as plaintiff in the first suit and defendant in the second suit, Motion for Disqualification of Opposing Counsel. The Court heard oral argument, received memoranda, and took the case under advisement. For the reasons set out below, the Court overrules the Demurrer and denies the Motion.

These cases raise the issue of the implications of the filing of a certificate of cancellation by the general partner of a limited partnership. Also raised is the issue of whether trial counsel should be disqualified because opposing counsel intends to call him as a witness.

### Facts

The cases arose as a result of activities occurring after the formation of the Parkway Asset Group Limited Partnership (hereafter "PAG"). The

general partner was Tigers IV, a plaintiff in Law No. 128557. Messrs. Siegfried, Parsels, Shotwell, and Van Hoose jointly owned a 10% limited partnership interest (for simplicity, they will be referred to collectively as the "Riverside Group"). Mr. Hirst and another party owned a 79% limited partnership interest in PAG. The business of PAG was to develop commercial office buildings in Prince William County.

In June 1988, PAG executed a separate promissory note to each of the Riverside Group. The principal amount of each note was five hundred thousand dollars. Messrs. Hirst and Lynch guaranteed the notes.

In July 1993, each member of the Riverside Group filed a separate suit against PAG for breach of the terms of the promissory notes. PAG was awarded summary judgment in each suit, as the notes were non-recourse. In a separate action, the Riverside Group filed suit against Messrs. Hirst and Lynch for breach of their guaranty of the notes. That suit was dismissed without prejudice for failure to join a necessary party, a bank to whom one of the notes had been pledged.

PAG eventually lost the land for the office site to foreclosure and PAG was subsequently liquidated. A certificate of cancellation of PAG's limited partnership certificate was filed effective September 14, 1993.

Turning to the present cases, in Law No. 128557, Tigers IV, as named liquidating partner of PAG, and Mr. Hirst, in his individual capacity, bring various claims against the Riverside Group. An order was entered consolidating that case with Law No. 128629, the case brought by the Riverside Group against the guarantors.

Both Hirst's and Tigers IV's claims in Law No. 128557 include a count for malicious prosecution. During a hearing on September 26, 1994, Mr. Mark P. Friedlander, the Riverside Group's counsel in these cases, stated that the Riverside Group will rely on the advice of counsel as a defense to the malicious prosecution claims. Mr. Friedlander is the counsel who represented the Riverside Group in the four suits on the notes and the earlier suit on the guaranty, and it is his advice upon which the Riverside Group is relying in its defense.

Trial is set for January 3, 1995.

### Demurrer

In their Demurrer to the malicious prosecution and abuse of process claims brought by Tigers IV in its capacity as general partner of PAG, the Riverside Group argues that because the certificate canceling PAG's limited partnership certificate had been filed with an effective date of Septem-

ber 14, 1993, PAG ceased to exist on that day. Thus, Tigers IV cannot bring suit on behalf of PAG because PAG has been completely liquidated.

Virginia Code § 50-73.13 states a certificate of cancellation shall be filed when "all the remaining property and assets of the limited partnership have been distributed to the partners." Although the Riverside Group places significance in the fact Plaintiffs' have canceled the certificate of limited partnership, the language of the statute does not support their contention that the filing of a certificate of cancellation precludes any further suits on behalf of a limited partnership, nor do they cite any authority to support this proposition. In an analogous situation, under Virginia corporate law, the termination of corporate existence does not impair its capacity to sue. A director, officer, or the shareholders may proceed for the corporation without limitations of time. *See* Va. Code § 13.1-755.

A case cited by Plaintiffs provides some guidance. In an action by a general partner of a limited partnership terminated per the partnership agreement, the Delaware Supreme Court allowed a subsequent suit, stating "We are by no means certain that such a failure [to file suit before dissolution] would cause courts . . . to close their doors to a suit by a limited partnership." *Cheyenne Oil Corp. v. Oil & Gas Venture, Inc.*, 204 A.2d 743 (Del. 1964). Banning any actions by the successor of the limited partnership reads quite a bit into Code § 50-73.13.

Code § 50-73.51 allows the general partners of a limited partnership to wind up the limited partnership's affairs. Winding up is "the process of settling affairs after dissolution." Crane and Bromberg, *Law of Partnership*, § 73 (1968). The claims brought by Tigers IV on behalf of PAG are part of the settlement process. Accordingly, the Riverside Group's Demurrer is overruled.

### Motion to Disqualify Counsel

I now turn to the second issue taken under advisement. Plaintiffs state they intend to call Mr. Friedlander, the Riverside Group's counsel in both these cases and the four prior suits on the notes, as a witness at trial. Plaintiffs intend to question Mr. Friedlander about the Riverside Group's intent in filing the suits that are the basis for the malicious prosecution claims, his own knowledge of the Riverside Group's alleged conspiracy, and the advice of counsel defense asserted by the Riverside Group. Plaintiffs state they will elicit testimony from Mr. Friedlander that is prejudicial to the Riverside Group and therefore, Mr. Friedlander should step down pursuant to Disciplinary Rules (hereafter "DR") 5-101(B) and 5-102(B).

The Riverside Group states it will not call its own counsel as a witness, and contends that the testimony Plaintiffs intend to draw from its counsel is either uncontested, immaterial, or available from other sources. The Riverside Group claims that disqualifying Mr. Friedlander from acting as their trial counsel after he has acquired over two years of knowledge in this matter would adversely impact its ability to present its case.

In deciding on a ruling for a Motion to Disqualify, the Court must balance its duty and responsibility to supervise the conduct of attorneys who appear before it with the right of a party to select his or her attorney. The party moving for disqualification bears a high standard of proof to show that disqualification is warranted "in light of the party's right to freely choose counsel . . . and the consequent loss of time and money incurred in being compelled to retain new counsel." *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990). This right, however, is secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to ensure and preserve trust in the integrity of the bar. *Id.*

Under DR 5-101(B), a lawyer should not undertake employment in pending or contemplated litigation if "he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness," subject to exceptions noted in DR 5-101(B)(1), (2) and (3). Similarly, under DR 5-102(A), after undertaking representation, an attorney is required to withdraw as counsel if he "learns or it is obvious that he ought to be called on behalf of his client," subject to the same three exceptions.

Apparently Mr. Friedlander does not believe the Riverside Group's advice of counsel defense needs to be advanced through his own testimony at trial because this information can be elicited through other witnesses, including his clients. Mr. Friedlander says he does not intend to call himself as a witness on behalf of his clients.

In *Borman v. Borman*, 393 N.E.2d 847 (Mass. 1979), the Massachusetts Supreme Court adopted the approach that it is better for the judge to defer to the best judgment of counsel and client. Based on the reasoning of *J. D. Pflaumer, Inc. v. Department of Justice*, 465 F. Supp. 746, 747 (E.D. Pa. 1979), the Court held:

> In *Pflaumer*, the court suggests three reasons why, in good faith disputes, deference should be paid to the judgment of the counsel whose disqualification is sought. First, the attorney and the client are in the best position to determine the necessity of counsel's testimony. Second, counsel and client face harsh conse-

quences if counsel continues while possessed of crucial testimony: the lawyers testimony might be inadmissible; counsel might be subject to disciplinary actions for violations of the code. Third, "if it is [counsel's and client's] best judgment that they can get by without testimony of counsel, then it is certainly not up to defendants to urge upon them a different plan of presentation that would necessitate disqualification."

*Borman*, 393 N.E.2d at 857.

I adopt the Massachusetts Supreme Court's standard for determining when a counsel ought to put himself on the witness stand on behalf of his client. Although I have some doubts about the wisdom of Mr. Friedlander having agreed to represent the Riverside Group in these cases, when it was clear from the outset that his clients were relying on an advice of counsel defense to the malicious prosecution claims, I will not at this late date dictate the Riverside Group's trial strategy and will not disqualify counsel pursuant to DR 5-101(B) or 5-102(A).

In these cases, Plaintiffs' counsel has represented to the court that he intends to call Mr. Friedlander as a witness at trial. DR 5-102(B) reads "If . . . a lawyer learns or it is obvious that he . . . may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client." Part of the reasoning against allowing an attorney to be both an advocate and a witness is he becomes more easily impeachable for interest and thus may be a less effective witness.

Ethical Consideration 5-9 reads "The role of an advocate and witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." I recognize Ethical Considerations are not binding authority, but they constitute a body of principles upon which the lawyer can rely for guidance.

Nonetheless, Plaintiffs have not demonstrated the potential of prejudicial testimony to the extent necessary to meet the burden required for disqualification. As moving party, Plaintiffs do not show detriment in allowing the opposing counsel to remain. Most of the testimony that Plaintiff seeks to elicit from Mr. Friedlander is uncontested. Mr. Friedlander has been deposed in these cases and he has represented to the Court that he and his clients substantially agree as to what his advice was and what they told him prior to the filing of the earlier suits. Other practical considerations such as the proximity of the trial date must be considered. I conclude it would work a "substantial hardship" to the Riverside Group if Mr.

Friedlander were disqualified at this late date. Therefore, Plaintiffs' motion is denied.