## CIRCUIT COURT OF THE CITY OF NORFOLK

David Adelman et al.

v.

Michael A. Kernbach et al.

November 7, 1997

Case No. (Law) L96-2317

BY JUDGE MARC JACOBSON

Defendants have filed a Motion to Disqualify Counsel in regard to the above captioned action. For the reasons hereinafter set forth, the Court, at this time, overrules Defendants' Motion to Disqualify.

The Plaintiffs in the instant action, a group of Portsmouth, Virginia, police officers, previously filed a claim under the Fair Labor Standards Act (FLSA) in the United States District Court for the Eastern District of Virginia against the City of Portsmouth (City). The Plaintiffs in this suit were represented by Defendant Michael A. Kernbach who, through the course of the litigation, was associated with different firms. In addition to Kernbach, three firms were named as defendants in the instant action, but two have since been nonsuited. The remaining defendant other than Defendant Kernbach is Jack T. Burgess & Associates (both jointly hereafter sometimes referred to as Defendants), with whom Kernbach was associated at the time the FLSA case in the United States District Court for the Eastern District of Virginia was settled.

In the instant action, Plaintiffs allege that Kernbach negligently prepared and delayed bringing their suit and, as a result, Plaintiffs "suffered and continued to suffer significant losses which directly effected [sic] their claims for compensation prior to the filing of the lawsuit and directly effected [sic]

them after the filing of the lawsuit and after the conclusion of the lawsuit." (Mot. J. ¶ 20.) Plaintiffs further allege that they relied to their detriment on Kernbach's erroneous advice that sending a letter to the Portsmouth City Attorney would toll the statute of limitations on their FLSA claims. (*Id.* ¶¶ 23-25.)

In the original suit pending in the United States District Court for the Eastern District of Virginia, the plaintiffs in that action allegedly settled their claim with the City on the eve of trial based on the advice and representations of Defendant Kernbach, and the settlement proposal was submitted to the Court. Subsequently, some of the plaintiffs expressed disapproval with the settlement and the City filed a motion to enforce the settlement agreement. The Court required Kernbach to distribute questionnaires approved by the Court to determine which plaintiffs disagreed with the settlement and whether those plaintiffs had authorized Kernbach to enter the settlement agreement on their behalf. (Defs. Mot. to Disqualify Counsel for Pl. ¶ 6.) Before the poll was completed, Plaintiffs retained and began to consult with Jeffrey A. Breit and Gregory A. Giordano (hereinafter referred to as "Attorneys") regarding the acceptance or rejection of the settlement terms. *Id.* ¶ 8. Attorneys counseled Plaintiffs regarding the questionnaire and added language which, Defendants allege, suggested the Plaintiffs had not authorized Defendants to settle the case for the amount in the agreement. Attorneys secured a new settlement for the Plaintiffs which was slightly higher than the original settlement, an amount the Plaintiffs now claim would have been greater but for Defendants' negligence in preparing and delaying the prosecution of their claims. *See Mot. for J.* ¶ 30. Attorneys represent the Plaintiffs in the instant action, and Defendants have filed a Motion to Disqualify seeking to disqualify Attorneys. Because Attorneys represented Plaintiffs in the underlying FLSA case, Defendants allege, Attorneys may be called as witnesses in the instant action.

The Court acknowledges that it should question "[t]he propriety of equating the force of a disciplinary rule with that of decisional or statutory law ... ." *Shuttleworth, Ruloff and Giordano, P.C. v. Nutter*, 254 Va. 494 (1997) (J. Kinser). However, as the Supreme Court did in the *Shuttleworth* case, this Court will consider the Disciplinary Rules in making its ruling.

A party moving for disqualification has a "high standard of proof to show that disqualification is warranted." *Tessier v. Plastic Surgery Specialists*, 731 F. Supp. 724, 729 (E.D. Va. 1990). This high standard is "fitting in light of [a] party's right to freely choose counsel ... and the consequent loss of time and money incurred in being compelled to retain new counsel." *Id.* (internal quotations and citations omitted); *followed in Tolson v. Secor*, 35 Va. Cir. 77

(1994). Although a party's right to choose counsel is a "fundamental principle," it must be considered in perspective with the rules of ethics and the integrity of the legal system. *Personalized Mass Media v. The Weather Channel, Inc.*, 899 F. Supp. 239, 242 (E.D. Va. 1995); *see also Tessier*, 731 F. Supp. at 729.

The Defendants assert that the Attorneys' representation of the Plaintiffs violates D.R. 5-102 of the Virginia Code of Professional Responsibility. D.R. 5-102 states as follows:

> (A) If ... a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness *on behalf of his client*, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial [unless the testimony relates to an uncontested matter, the testimony relates to the value of legal service, or the disqualification would place "substantial hardship" on the client because of the distinctive value of the lawyer or firm to the particular case].
>
> (B) If ... a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness *other than on behalf* of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

Virginia Code of Professional Responsibility, Rule 5-102 (1997) (emphasis added). The Defendants argue that the Attorneys' continued representation of the Plaintiffs violates both subparts of this rule.

Virginia has not specifically defined when counsel "ought to be called" as a witness for a client. However, it has ruled that an attorney is "competent" to testify under D.R. 5-102(A) if "the testimony is important and no other witness would be able to supply it." *United States v. Nyman*, 649 F.2d 208, 211 (4th Cir. 1980). Virginia has also acknowledged that the judge should defer to the best judgment of counsel and client:

> [T]he attorney and client are in the best position to determine the necessity of counsel's testimony ... . [I]f it is counsel's and client's best judgment that they can get by without testimony from counsel, then it is certainly not up to defendants to urge upon them a different plan of presentation that would necessitate disqualification.

*Hirst v. Siegfried*, 35 Va. Cir. 166, 169-170 (1994) (citation omitted).

Other states have defined when counsel "ought to be" a witness for his own client. Some courts have required withdrawal when counsel's testimony "could be significantly useful to [a] client." *MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1208 (S.D. N.Y. 1981). Other courts require withdrawal only if counsel is an "indispensable witness." *Universal Athletic Sales v. American Gym, Recreational & Athletic Equipment*, 546 F.2d 530, 539, n. 21 (3d Cir. 1976), *cert. denied*, 430 U.S. 894 (1977); *see also, Clinton Mills, Inc. v. Alexander & Alexander*, 687 F. Supp. 226 (D. S.C. 1988).

In the instant case, Defendants claim that Attorneys ought to testify on behalf of their own clients regarding the "terms of the settlement, the Plaintiffs' acceptance of the settlement, the Plaintiffs' failure to object to or withdraw from the settlement, and the Plaintiffs' understanding of the terms of the settlement," (*Def. Mem. in Resp. to Plaintiffs' Contention That Motion to Disqualify is Moot*, at 4), as well as the "valuation of the settlement" (*Id.* at 6) and the reasonableness of the final settlement. (*Id.* at 10.) They also encourage the Attorneys to testify regarding the substantive claim of negligence and the Plaintiffs' damages in the current action. *Id.* at 9.

Some of these areas, the Defendants suggest, might help to prove whether the Defendants' negligence proximately caused the Plaintiffs' injuries and what their damages might have been. Assuming Plaintiffs' plan to present evidence addressing these areas, at this time, it is not clear to the Court that such evidence could not be provided by sources other than the Attorneys.

The terms of the final settlement, for instance, might be available from the face of the settlement agreement and, in fact, might not be disputed. Moreover, it is not clear to the Court that Attorneys' testimony is or is not necessary to establish the reasonableness of the final settlement. Any lawyer who is familiar with FLSA work might be able to establish this. The same might also be true for the alleged substantive claim of negligence against the Defendants. As in any malpractice action, parties may present experts to testify about what a responsible professional would have done under a given set of circumstances. Furthermore, it is not clear whether the Attorneys are "uniquely qualified" to testify about the Plaintiffs' understanding of either the initial settlement or the final settlement (*see Def. Mem. of Law in Support of Def's. Mot. to Disqualify Counsel for the Plaintiffs*, at 15), rather than the Plaintiffs themselves. Similarly, it is not clear whether Plaintiffs will be able to testify about the extent of their damages or whether experts or other witnesses might support or refute their evaluations.

Further, it is possible Plaintiffs themselves or independent witnesses will explain the valuation of the settlement. For example, the Plaintiffs or independent witnesses could testify about the amount of award they might

have expected from the litigation of the FLSA claim and the advantages they saw of early settlement. The Plaintiffs themselves perhaps are the best situated to testify about their reasons for accepting the final settlement. In addition, Attorneys might claim any recommendations they gave Plaintiffs as privileged. Furthermore, this Court must presume the decision to accept or reject the settlement, and the reasons supporting that decision were ultimately those of the Plaintiffs. Thus, the testimony or evidence of the Plaintiffs might address this issue.

Similarly, Plaintiffs might present their reasons for accepting the final settlement in reply to the defense of estoppel. This is a matter of evidence presumably to be presented and/or developed at the time of trial.

In the instant case, Attorneys and clients have decided that, at this time, they can "get by without testimony from counsel." *Hirst*, 35 Va. Cir. at 170. The Court at this time has no basis to conclude that this decision was not made according to their "best judgment." *Id*. At this stage of the proceedings, that the Attorneys should testify on behalf of their clients and that their decision not to was a misjudgment is not so "obvious" that this court should substitute its own determination for that of the Attorneys and Plaintiffs.

Accordingly, at this time, the Court concludes that in light of the foregoing and the available alternate sources of evidence, Defendants have not shown that Attorneys "ought to be called" as witnesses for their clients. They certainly have not shown that the Attorneys are "indispensable witness[es]." *Universal Athletic Sales*, 546 F.2d at 539, n. 21. Although their testimony might be useful, it might be merely corroborative. If their testimony is only corroborative, it will not be "significantly useful." *MacArthur*, 524 F. Supp. at 1208.

In addition, Defendants claim that a person currently with the Attorneys' firm, attorney Michael Imprevento, ought to testify on behalf of the Plaintiffs because he had appeared as counsel at one of the settlement meetings. Imprevento had worked for a law firm, unrelated to this case, representing a similar group of plaintiffs in the same claim against the city. The Defendants claim that Imprevento could testify about whether the Defendants negligently relied on the preparations of his firm. *See, Def. Mem. of Law in Supp. of Def's. Mot. to Disq. Counsel for the Plaintiffs*, at 10.

At this time, it is not known if Imprevento's testimony is relevant, indispensable, and/or even significantly useful. Attorneys and plaintiffs know better than the Defendants or this Court the content and strength of Imprevento's testimony, and, at this time, it is proper for the Court to defer to the counsel-client decision regarding the necessity of counsel's testimony. Moreover, the Court cannot at this time conclude that counsel and client have

not used their best judgment in determining that Imprevento's testimony is not necessary for the Plaintiff's case. The Court declines, at this time, to disqualify Attorneys on the basis of Imprevento's association or connection with Attorneys.

Defendants have also raised the issue of whether or not Attorneys may be called to testify on behalf of the Defendants. As with D.R. 5-102(A), D.R. 5-102(B) places the burden of proof on the moving party to show that disqualification is warranted. *See Tessier, supra*, D.R. 5-102(B) additionally requires the moving party to prove that the anticipated testimony will be prejudicial to the counsel's client. This requirement guards against parties filing motions merely to obtain a tactical advantage. *See Personalized Mass Media*, 899 F. Supp. at 242. *See also Clinton Mills*, 687 F. Supp. at 230. Therefore, "the threat by an opposing counsel to call an attorney as a witness is not *per se* sufficient to require the attorney's withdrawal from the case." *Tolson*, 35 Va. Cir. at 78 (citing L.E.O. No. 1517). In addition, the testimony must be "relevant" and "necessary" to the moving party's case (*Personalized Mass Media*, 899 F. Supp. at 243), as well as "genuinely needed" (*Clinton Mills*, 687 F. Supp. at 230), before a court may require disqualification.

In the instant case, Defendants have stated an intent to call the Attorneys to testify for the defense. Specifically, they allege that the Attorneys' testimony is necessary to show that the Plaintiffs are estopped from bringing this legal malpractice claim.

The mere assertion or allegation that the Attorneys' testimony will be prejudicial to the Plaintiffs does not necessarily mean that such testimony, in fact, will be prejudicial. The Defendants do not explain how the testimony will prejudice the Plaintiffs; they merely state their belief that it will support their estoppel defense. *Def. Mem. in Resp. to Plaintiffs' Cont. That Mot. to Disq. is Moot*, at 15. If the Attorneys' testimony actually advances the Defendants' case, it might be prejudicial to the Plaintiffs' case; but, at this time, the Court cannot conclude that this is "apparent." In addition, Defendants have not shown that the Attorneys' testimony is "relevant," "necessary," and "genuinely needed," for the alleged estoppel defense of the Defendants could or might be presented by witnesses other than the Attorneys.

Furthermore, Defendants allege that Attorneys "are potentially liable to the Plaintiffs and potential third-party Defendants." *Def. Mem. in Resp. to Plaintiffs' Cont. That Mot. to Disq. is Moot*, at 16. At this juncture in the proceedings, the circumstances present merely a potential conflict of interest which should not result in the Attorneys' disqualification at this time. An actual conflict of interest must arise before withdrawal is required. *See*

*Richmond Hilton Assoc. v. Richmond*, 690 F.2d 1086, 1089 (4th Cir. 1982). "[T]he disqualification of a party's chosen counsel is a serious matter which cannot be based on *imagined scenarios of conflict*." *Tessier*, 731 F. Supp. at 729 (emphasis added).