### In re Joseph Richard WYER.

### No. 81–528.

United States Court of Customs and Patent Appeals.

July 30, 1981.

Rehearing Denied Oct. 1, 1981.

---

4. Notice of and reasons for the suspension are set forth in the Commissioner's Memorandum of July 17, 1981.

John Smith-Hill, Lester Horwitz and Roger S. Thompson, New York City, for appellant.

Joseph F. Nakamura, Sol. and Jere W. Sears, Deputy Sol., Washington, D. C., of counsel for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection of all claims under 35 U.S.C. § 102(b),[1] on the ground that applicant's invention was described in a printed publication in a foreign country more than one year prior to the U.S. filing date of his application serial No. 740,343, filed November 9, 1976, for a patent on a "Cable Junction Box." We affirm.

*Background*[2]

This appeal was heard on an agreed statement of the case, pursuant to CCPA Rule 5.5, which presents the following facts. On March 13, 1972, appellant filed Australian Patent Application No. PA 8273 accompanied by a provisional specification, that is, one without claims. On February 28, 1973, appellant filed a specification with claims and on August 29, 1974, more than two years before filing of the application at bar, the entire application, renumbered as patent application 52,691/73, was laid open to public inspection by the Australian Patent Office and a printed abstract thereof was published. The disclosure of the instant U.S. application corresponds to that of the Australian application.

---

1. § 102(b) reads, in pertinent part:

    A person shall be entitled to a patent unless—

    \*    \*    \*    \*    \*    \*

    (b) the invention was \* \* \* described in a printed publication in this or a foreign country \* \* \* more than one year prior to the date of the application for patent in the United States \* \* \*.

2. Appellant's motion requesting the court to take judicial "notice of certain facts and for leave to file a supplemental reply brief in regard thereto, or, to remand the application for further proceedings in the Patent and Trademark Office," disposition of which was reserved until after oral argument, is hereby denied.

Involved here are: (1) a microfilm copy of the Australian application preserved in the Australian Patent Office as a security reel, (2) a microfilm copy of the application that is cut up and used to make diazo copies, and (3) the diazo copies. Appellant explained further in his brief before the board:

Information which has recently been received shows that at the time in question in the case namely August 29, 1974 when the Abstract of the corresponding Australian application was published, it was the practice of the Australian Patent Office to produce two microfilm copies of each specification. These copies were made on 16 mm film, with each frame corresponding to a page of the specification. One of the microfilm copies was retained in the Patent Office as a security reel, to provide a permanent record of the specification, while the second copy was cut into strips of up to six frames and up to six strips were placed within a transparent jacket. By selecting the number of frames of each strip, and the number of strips in each jacket, the microfilm frames of each specification were placed in one or more jackets, and each jacket contained the microfilm frames pertaining to only one application.

The transparent jackets containing these strips of the second microfilm copy were than [sic] used to produce diazo copies, each copy being a photograph of up to 36 microfilm frames * * *.

Six of these diazo copies were produced, one being retained at the Australian Patent Office and the other five being distributed to the sub-offices respectively. (It has been learned that there are five of these suboffices not six as indicated in the brief filed August 30, 1978.) The second microfilm copy (cut in strips placed within transparent jackets) was also retained in the Australian Patent Office to permit production of further diazo copies should the need arise, as explained below.

Equipment was available to the public in the Patent Office and in the sub-offices for providing an enlarged reproduction of the diazo copies on a display screen. Equipment was also available for producing enlarged paper copies for purchase by the public. Moreover, diazo copies were also available for sale to the public upon application to the Australian Patent Office, these latter diazo copies being produced to order from the second microfilm copy, as mentioned above.

## Issue

The sole issue is whether what occurred in the Australian Patent Office resulted in the production of a "printed publication" within the meaning of 35 U.S.C. § 102(b).

## The Board Opinion

The board began its opinion by stating that to be a printed publication "the document must, of course, have been both 'printed' and 'published'," citing *In re Tenney*, 45 CCPA 894, 254 F.2d 619, 117 USPQ 348 (1958). With respect to what it termed the " 'printed' requirement," it stated that although *Tenney* held otherwise, the "trend seems to be that a microfilm is 'printed'." In support of this proposition the board cited the leading cases of *Philips Electronic & Pharmaceutical Industries Corp. v. Thermal & Electronics Industries, Inc.*, 450 F.2d 1164, 171 USPQ 641 (3d Cir. 1971), and *I.C.E. Corp. v. Armco Steel Corp.*, 250 F.Supp. 738, 148 USPQ 537 (S.D.N.Y.1966). Noting the procedure followed in the Australian Patent Office, the board disposed of the first requirement, saying:

We fail to see any difference in dissemination probability in reproducing a copy of a document from the microfilm upon request on the one hand and in reproducing a number of copies from the microfilm and storing them on a shelf for distribution upon request on the other hand. * * *.

In any event, * * * copies were reproduced from the microfilm * * * [and these] six diazo copies constitute evidence that copies were in fact made from the microfilm of the Australian application.

Accordingly, we find that the microfilm of the Australian application meets the "printed" requirement.

Turning to the "publication" requirement, the board noted that the touchstone is public accessibility and resolved the question in the following manner:

Here, the Australian application was accessible to the public as of August 29, 1974. An Abstract, claim 1 of the application, was published at that time. The application was classified, and the Abstract was arranged with other Abstracts according to this classification system. No question has been raised as to the propriety of the classification. A copy of the entire Australian application was available upon request using microfilm reproduction equipment. Under these circumstances, which occurred as of August 29, 1974, we are convinced that the invention was readily accessible to that part of the public most concerned with it and, therefore, [there was] a "publication."

Although the board recognized that there exists a line of cases which hold that a patent application open to the public in a patent office is not a "printed publication," it stated that, "the provision of a microfilm of the application together with the availability of equipment for making copies from the microfilm increases the probability that the document will be widely circulated." Furthermore, said the board,

An additional factor is that the diazo copies of the Australian application are kept in the Australian Patent Office and its branches. A patent office is the repository of inventions and the place where the artisan would turn for solutions for problems. What better place is there to store information to enhance the probability of its wide circulation?

In conclusion, the board stated:

We think that the time has come to hold that a microfilm of a foreign patent application maintained in the foreign patent office, accessible to the pertinent part of the public and available for duplication is a "printed publication" as of its date of accessibility, and we so hold.

Upon appellant's request for reconsideration of its decision, the board stated that it regarded both the cut up original microfilm copy and any one of the diazo copies as a "printed publication." The microfilm copy preserved as a security reel in the Australian Patent Office was not mentioned.

### Arguments On Appeal

Appellant presents different arguments regarding the application of § 102(b) depending upon the type of copy involved. He argues that the microfilm copy that is cut up is used to make numerous identical copies and is, therefore, no more "printed" than is a lithographer's plate or a mimeograph stencil. Since the film is kept in the patent office and used only for official purposes, he further argues that it cannot be considered a "publication" because there is no public access to it. Additionally, although he contends that by the board's failure to discuss the microfilm copy preserved as a security reel in the patent office in its response to his request for reconsideration, it has impliedly agreed that it is not a printed publication, he asserts that the above arguments regarding the cut-up copy apply with equal force to the security copy.

With regard to the diazo copies, appellant states that a microfilm copy available to the public for reproduction is not "printed," that only the copies made therefrom are. He urges that "To hold otherwise, would result in any legible document that is accessible to the public being regarded as a printed publication (e. g., the original Declaration of Independence), since an unlimited number of copies of the document could be reproduced by modern xerographic or photographic techniques." Further, it is asserted that because only seven copies were in fact produced and only with the intention that they not be circulated to the public but held within the patent office and its branches, they cannot be regarded as "printed."

Since publication implies not only access, it is argued, but activity in distributing the

document to the public, appellant submits that the diazo copies also do not meet the "publication" requirement. The distinction, he states, is between a copy of a document reproduced in advance, so as to be immediately available for distribution, and one reproduced only upon request. In this case the diazo copies were not circulated but were maintained in the patent office and its branches.

Appellant also asserts that it is well-settled that a foreign patent application laid open to public inspection is not a printed publication, citing *In re Haller*, 103 USPQ 332 (Bd. App. 1953). The only difference between that case and the case at bar, it is maintained, is that there one full-sized legible copy was at issue, whereas here seven copies were laid open to inspection which could not be read without magnification. Appellant argues that whether a patent application open to inspection in a foreign patent office is a printed publication should not depend upon the technique used to reproduce the application.

The solicitor, on the other hand, argues that we should reexamine the (allegedly) broad holding of *In re Tenney*, supra, that microfilm is not a printed publication. The PTO emphasizes that the *Tenney* court noted in that case that there was only one microfilm available. It stated that "there is no *probability* from a mere showing that a microfilm copy of a disclosure has been produced, that the disclosure has achieved wide circulation and that, therefore, the public has knowledge of it." The instant case is different, the PTO argues, for all but one diazo copy has been geographically distributed to sub-offices, ostensibly to facilitate viewing by the Australian public. Since the patent office was ready to supply, on order, blown-up prints made from the diazo copies, the probability of public knowledge of appellant's application exceeds that for the German application in *Tenney*. Any requirement that prints be made in advance, it is submitted, would defeat the very purpose of using microfilm, which is to save space.

## OPINION

It has been stated by this and other courts that to constitute a "printed publication," as that term is used in § 102, a reference must be both "printed" and "published." *In re Bayer*, 568 F.2d 1357, 1359, 196 USPQ 670, 673 (CCPA 1978); *In re Tenney*, 45 CCPA 894, 898, 254 F.2d 619, 622, 117 USPQ 348, 351 (1958); *General Tire & Rubber Co. v. Firestone Tire Co.*, 349 F.Supp. 345, 355, 174 USPQ 427, 442 (N.D. Ohio 1972), *modified*, 489 F.2d 1105, 180 USPQ 98 (6th Cir. 1973). *See generally* 1 Chisum, *Patents* § 3.04 (1978); Rose, *Do You Have A "Printed Publication?" If Not, Do You Have Evidence Of Prior "Knowledge Or Use?"*, 61 JPOS 643 (1979); Herbster, *It's Time To Take The "Printing" Out Of "Printed Publications"*, 49 JPOS 38 (1967).

With regard to the "printing" requirement, it has been stated that the "only realistic distinction that we can see as between 'handwritten' and 'printed' publications relates to the *method* of producing them." *Tenney*, supra at 901, 254 F.2d at 625, 117 USPQ at 353 (emphasis in original). In other words, the requirement of printing increases the probability that a reference will be available to the public, for "Congress no doubt reasoned that one would not go to the trouble of printing a given description of a thing unless it was desired to print a number of copies of it." *Id.* at 902, 254 F.2d at 626, 117 USPQ at 354.

The "publication requirement," said to be "so connected with [the "printing" requirement] that treatment of the one cannot be satisfactorily done without overstepping into the bounds of the other," *Id.* 45 CCPA at 898 n.4, 254 F.2d at 622 n.4, 117 USPQ 351 n.4, has been equated with public accessibility to the "printed document." *In re Bayer*, supra 568 F.2d at 1359, 196 USPQ at 673.

On the other hand, there are a number of cases which eschew this two-tiered approach and view the unitary concept of "printed publication" in the context of dissemination or accessibility alone. *Philips Electronics & Pharmaceutical Industries*

*Corp. v. Thermal & Electronic Industries, Inc.*, 450 F.2d 1164, 1170, 171 USPQ 641, 645 (3d Cir. 1971); *I.C.E. Corp. v. Armco Steel Corp.*, 250 F.Supp. 738, 742, 743, 148 USPQ 537, 540 (S.D.N.Y.1966). It was reasoned in *Philips* that:

The traditional process of "printing" is no longer the only process synonymous with "publication." The emphasis, therefore, should be *public dissemination* of the document, *and its availability and accessibility* to persons skilled in the subject matter or art. [Emphasis ours.]

■ We agree that "printed publication" should be approached as a unitary concept. The traditional dichotomy between "printing" and "publication" is no longer valid. Given the state of technology in document duplication, data storage, and data-retrieval systems, the "probability of dissemination" of an item very often has little to do with whether or not it is "printed" in the sense of that word when it was introduced into the patent statutes in 1836.[3] In any event, interpretation of the words "printed" and "publication" to mean "probability of dissemination" and "public accessibility," respectively, now seems to render their use in the phrase "printed publication" somewhat redundant. This becomes clear upon examination of the purpose of the § 102 printed publication bar.

■ As this court pointed out in *In re Bayer*, supra 568 F.2d at 1359, 196 USPQ at 675, the printed publication provision was designed to prevent withdrawal by an inventor, as the subject matter of a patent, of that which was already in the possession of the public. Thus, the question to be examined under § 102(b) is the accessibility to at least the pertinent part of the public, of a perceptible description of the invention, in whatever form it may have been recorded. Access involves such factual inquiries as classification and indexing. In other words,

such a reference is a "printed publication" and a bar to patentability

* * * upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation. [*I.C.E. Corp.*, supra [250 F.Supp.] at 743, 148 USPQ at 540.]

■ Appellant filed an application for an Australian patent which resulted in copies of that application being classified and laid open to public inspection at the Australian Patent Office and each of its five "sub-offices" over one year before he filed his application in the United States. Appellant himself informs us that:

Equipment was available to the public in the Patent Office and in the sub-offices for providing an enlarged reproduction of the diazo copies on a display screen. Equipment was also available for producing enlarged paper copies for purchase by the public. Moreover, diazo copies were also available for sale to the public upon application to the Australian Patent Office, these latter diazo copies being produced to order from the second microfilm copy * * *.

Even though no fact appears in the agreed statement respecting actual viewing or dissemination of any copy of the application, there is no dispute that the records were maintained for this purpose. Given that there is also no genuine issue as to whether the application was properly classified, indexed, or abstracted, we are convinced that the contents of the application were sufficiently accessible to the public and to persons skilled in the pertinent art to qualify as a "printed publication," notwithstanding those cases holding that a foreign patent

---

3. The "printed publication" bar appears to have been first enacted in § 7 (on examination) of the Patent Act of 1836, 5 Stat. 117, July 4, 1836. Section 6 of the Act of 1793, 1 Stat. 318, listing defenses, used the expression "described in some public work anterior to the supposed discovery of the patentee."

application laid open for public inspection is not a printed publication.[4]

 While intent to make public, activity in disseminating information, production of a certain number of copies, and production by a method allowing production of a large number of copies may aid in determining whether an item may be termed a "printed publication," they are neither always conclusive nor requisite. Each case must be decided on the basis of its own facts. Accordingly, whether information is printed, handwritten, or on microfilm or a magnetic disc or tape, etc., the one who wishes to characterize the information, in whatever form it may be, as a "printed publication"

   * * * should produce sufficient proof of its dissemination or that it has otherwise been available and accessible to persons concerned with the art to which the document relates and thus most likely to avail themselves of its contents. [*Philips Electronic Corp.*, supra 450 F.2d at 1171, 171 USPQ at 646.]

Through demonstration of the accessibility of reproductions of appellant's application in the Australian Patent Office and in each of its sub-offices, the PTO has met this burden.

In affirming the board's decision, however, we do not approve its rather sweeping statement, quoted at the beginning, that

   * * * the time has come to hold that a microfilm of a foreign patent application maintained in the foreign patent office, accessible to the pertinent part of the public and available for duplication is a "printed publication" * * *.

We are approving its decision on the totality of the facts of this case, several of which are missing from that statement. Decision in this field of statutory construction and application must proceed on a case-by-case basis.

The decision of the board affirming the rejection of claims 1–5 and 7–13 is *affirmed*.

*AFFIRMED.*

4.  *Philips Electronic Corp.*, supra 450 F.2d at 1171, 171 USPQ at 646; *Bendix Corp. v. Balax, Inc.*, 421 F.2d 809, 811, 164 USPQ 485, 487 (7th Cir. 1971); *Reeves Bros., Inc. v. United States Laminating Corp.*, 282 F.Supp. 118, 136, 157 USPQ 235, 250 (E.D.N.Y.1968), *aff'd*, 417 F.2d 869, 163 USPQ 577 (2d Cir. 1969); *General Tire*

*& Rubber Co. v. Firestone Tire Co.*, 349 F.Supp. 345, 355, 174 USPQ 427, 442 (N.D.Ohio 1972); *Ex parte Haller*, 103 USPQ 332, 334 (Bd.App. 1953). *See* the discussion in *In re Tenney*, supra 45 CCPA at 899–900, 254 F.2d at 624, 117 USPQ at 352.