TYLER REFRIGERATION
CORPORATION,
Plaintiff,

v.

KYSOR INDUSTRIAL CORPORATION,
Defendant.

Civ. A. No. 79–497.

United States District Court,
D. Delaware.

Dec. 17, 1982.

Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Robert E. LeBlanc of LeBlanc, Nolan, Shur & Nies of Arlington, Va., for plaintiff.

Steven J. Rothschild and Edward P. Welch of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del., and Richard C. Cooper of Price, Heneveld, Huizenge & Cooper, Grand Rapids, Mich., for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This case involves a dispute between plaintiff Tyler Refrigeration Corporation ("Tyler") and defendant Kysor Industrial Corporation ("Kysor") over patent claims of refrigerated display cases. These cases are found in many of this nation's grocery stores displaying meat, fish, poultry, and dairy products. Tyler has brought this action pursuant to 28 U.S.C. §§ 1338(a) and 1400(b) and 35 U.S.C. §§ 271 and 281, seeking injunctive relief against Kysor from continuing to infringe U.S. Patent 4,144,720 ("the '720 patent"), U.S. Patent 4,207,747 ("the '747 patent"), and U.S. Patent 4,283,-922 ("the '922 patent") (collectively referred to as the "Subera patents"). (Docket Item ["D.I."] 72.) Kysor denies that it is infringing the Subera patents and instead contends that these patents were unlawfully obtained by Tyler. Kysor also has counterclaimed pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1338(a), and 35 U.S.C. §§ 271 and 281, seeking declaratory and injunctive relief against Tyler from continuing to infringe its U.S. Patent 4,027,121 ("the Aokage patent"). Tyler denies that it is infringing the Aokage patent and contends that the Subera patents teach a new concept over the Aokage patent for refrigerator display cases. Kysor has moved pursuant to Rule 56(b), F.R.Civ.P., for a partial summary judgment seeking the Court to declare the Subera patents invalid and unenforceable and to dismiss Tyler's amended and supplemental complaint.

## BACKGROUND FACTS

The Aokage patent now assigned to Kysor was issued on May 31, 1977, upon an application filed in the United States Patent & Trademark Office on May 17, 1976. It was granted the benefit under 35 U.S.C. § 119 of a prior application which had been filed on May 20, 1975. (D.I. 95A, Ex. 4.) In general, the Aokage patent describes an open front refrigerated display case commonly used in grocery stores for displaying perishable food products. The Aokage invention discloses a method of accomplishing defrosting operation in an open display case by using an electric heater, drawing warm outside air into the show case and causing it to flow past parts on which frost has deposited. Kysor also contends that the Aokage patent provides a defrost method which is inexpensive and merely requires the use of reversible motors for two air fans and a control circuit for controlling forward-reverse operation of these motors.

On April 25, 1977, the '720 application was filed with the U.S. Patent and Trademark Office for a refrigerated display case, but was rejected on February 13, 1978, in an Office Action because the Examiner found in part that the '720 patent was anticipated by the Aokage patent. (D.I. 95A, Ex. 5 at 34–35.) On June 12, 1978, Tyler filed an amended application for the '720 patent without supplying the Examiner with a copy of the Office Action of February 13, 1978, or the Aokage patent. It represented to the Examiner that functional distinctions exist between the '720 patent and the Aokage patent because the '720 patent teaches the maintenance of the primary air curtain across the open front of the display case during both the refrigerated and defrost cycle, while the Aokage patent discloses that the primary air curtain is short circuited during the defrost cycle. (D.I. 95A, Ex. 5 at 49.) The Examiner, apparently relying upon these representations, withdrew the rejection and issued the '720 patent on March 20, 1979.

On July 26, 1978 and September 17, 1979, the '747 and '922 patents were filed respectively with the U.S. Patent and Trademark Office with the same disclosures made in the '720 patent application but with additional claims. (D.I. 95A, Exs. 2 & 3.) Dur-

ing the prosecution of the '922 patent, Tyler represented that the Aokage patent was the most pertinent available prior art and that the fundamental distinction between the Subera patents and the Aokage patent was that the Tyler patents teach the maintenance of the air curtain during the defrost cycle, while the Aokage patent did not teach such maintenance:

> The most pertinent available prior art known to Applicants and their representatives is the Aokage U.S. patent 4,926,121 cited by the Examiner. The Aokage patent discloses a display case having inner and outer conduits with fans therein for moving air therethrough. The patent discloses two embodiments: in one, the inner or primary band fans are reversed during the defrost cycle and the secondary or guard band fans maintain air flow through the outer conduit in the same direction as in the refrigeration cycle; in the second embodiment, the secondary band fans maintain air flow through the inner conduit in the same direction during both the refrigeration and defrost cycles.

> The defrost system disclosed in the Aokage patent causes the primary band air curtain to be cut off and short-circuited during the defrost cycle. The Aokage patent clearly teaches that "in the passage 5 for circulation of cold air, the flowing air no longer forms an air curtain to undergo circulation within the passage. . . ."

(D.I. 95A, Ex. 7, Paper # 11/D at 4.) The '747 patent was issued on June 17, 1980 and the '922 patent on August 18, 1981.

Kysor contends that the Subera patents are invalid for two reasons. First, Kysor maintains that the patents are invalid under 35 U.S.C. §§ 282 and 102(b) because the subject matter of the patents were described in a printed publication more than one year before April 25, 1977, the date of filing of the '720 patent. Second, Kysor asserts that the Subera patents are invalid under Section 102(b) because the subject matter was anticipated by the Aokage patent.

PRIOR PRINTED PUBLICATION

Kysor contends that the Subera patents are invalid under Section 102(b) because printed publications, which were accessible and disseminated at two trade shows, described a refrigerator display case that maintained an air curtain during the defrost cycle. One of the trade shows was held in Tokyo, Japan, on March 3–6, 1976, and was called the 10th Japanese Self Service Association Show ("10th JSSA Show"); the other show was held in Sendai City, Japan, on April 9–11, 1976, and was called the Third Tohoku Exhibition ("Tohoku Exhibition"). At both of these trade shows, Fuji Denki Seizo K.K. ("Fuji"), the then assignee of the Aokage patent, displayed at a booth photoprint panels depicting a refrigerated display case. Kysor contends that one figure on the photoprint panels depicted the continued forward flow of an inner air curtain across the open front of the display case and the reverse flow of one outer air curtain during the defrost cycle. It also asserts that just above the figures on the photoprint panels, Fuji displayed a printed description panel describing the refrigerated display case. (D.I. 95A, Ex. 15 at 3.) The printed description was a transparent panel with the Japanese language characters printed in white and explained the method by which the air curtain was maintained during the defrost cycle. Tyler disagrees with Kysor and argues that the photoprint panels and the description thereof did not teach the maintenance of the primary air curtain across the front of the refrigerated display case.

Fuji also prepared a hand printed Technical Brochure B09–01 ("Brochure") which, according to Kysor, contained two figures of a reversed air defrost, dual air curtain, open front, refrigerated display case and depicted the maintenance of an air curtain during the defrost cycle. The Brochure was created for two purposes. One purpose was to provide an explanation of the reverse flow, air defrost refrigerated display case for technical and sales people inside and outside Fuji. The second purpose was to provide information for the preparation of the photoprint display panels. (D.I. 95A,

282

Ex. 15 at 1–2.) Xerographical copies of the hand printed Brochure were prepared prior to the 10th JSSA Show which was held on March 3–6, 1976. (*Id.*) Some evidence exists in the record that some of these xerographical copies were distributed at both the JSSA trade show and Tohoku Exhibition. (*See* D.I. 24 at 4.) On April 6, 1976, 300 offset printed copies of the Brochure were produced and on April 7, 1976, 247 of these printed copies were sent to persons inside and outside of Fuji. (D.I. 15 at 5–6.) As in the case of the xerographical copies of the Brochure, some evidence exists to indicate that the offset copies were distributed to persons at the trade show. For example, Mr. Takana, who was sales manager of the Fuji Tohoku branch office, has stated in an affidavit that he received ten copies of the offset printed copies of the Brochure, was aware that he could freely distribute the Brochure and did, in fact, distribute the copies to several people at the Tohoku Exhibition. (D.I. 95A, Ex. 29 at 3–4.) Mr. Okamoto, an engineer for Fuji, indicates in another affidavit that copies of the offset printed Brochure were sent to an independent distributor of refrigerator products and that the distributor was free to distribute the Brochures. (D.I. 95A, Ex. 15 at 6–7.) Notwithstanding these statements by Fuji employees which reveal that xerographical and offset printed copies of the Brochure were distributed to trade persons, the record does not disclose the number of individuals who received copies of the Brochure.

Kysor contends that the large photoprint drawing panels displayed at the trade shows, and the offset printed and xerographical copies of the hand printed Brochure are printed publications under Section 102(b). Kysor argues that each of these printed publications set forth a perceptible description of a refrigerated display case and directly corresponds to the patented concept of the Subera patents; and that persons interested in the display case would recognize and comprehend the essentials of the invention. Finally, it maintains that these printed publications were in the public domain more than one

year before the dates of the applications for any of the Subera patents and therefore renders the Subera patents invalid.

■ Section 102(b) of 35 United States Code provides in pertinent part:

A person shall be entitled to a patent unless . . . (b) the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States, . . . .

One of the purposes of Section 102(b) is to prevent a patentee from improperly removing technology from the public domain. Congress determined that if an invention had been described in a printed publication for more than one year prior to the date of the application for patent in the United States, then the person would not be entitled to receive a patent and the resulting fruits therefrom. Thus, "the printed publication provision was designed to prevent withdrawal by an inventor, as the subject matter of a patent, of that which was already in the possession of the public." *In re Wyer*, 655 F.2d 221, 226 (Cust. & Pat. App.1981).

■ The term printed publication is a term of art. Traditional methods of printing are not the only acceptable methods for the purpose of satisfying the "printed publication" standard; nonprinted materials, such as microfilm, drawings, and photographs have also satisfied the Section 102(b) printed publication requirement. *See Wyer, supra,* at 223–24; *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.,* 546 F.2d 530, 543 (C.A. 3, 1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc.,* 450 F.2d 1164, 1170 (C.A. 3, 1971). The key inquiry to determine whether material is a printed publication under Section 102(b) is whether the "material was sufficiently accessible to the public," so that "persons concerned with the art to which the documents relate" have had an opportunity to inspect and digest the information. *Philips,*

*supra,* 450 F.2d at 1171. The proponent of the material as a printed publication thus is required "to make a satisfactory showing that a person interested in and ordinarily skilled in the art can locate it, and understand the essentials of the claimed invention without further research or experimentation." *Id.*

■ Tyler asserts that these materials are not printed publications because the figures on the panels, and the accompanied written descriptions were not published in a periodical printed for those of the trade. It argues that a photograph or drawing which is not part of "an admitted printed publication," (i.e., trade periodical), is not by itself a printed publication. (D.I. 99 at 13–14.) The Court rejects this assertion because the term "printed publication" encompasses a broad class of materials and is not limited to include only those materials which appear in a periodical distributed to those learned in the art. The primary question is not whether the material appeared in a trade periodical, but whether the photoprint panels, the written description thereof and the copies of the Brochure were sufficiently accessible and disseminated to those skilled in the art.

Kysor asserts that the photoprint panels and the description panels detailing the refrigerated display case constitutes a printed publication because the panels were prominently displayed at a trade show and repeatedly photographed by the trade show visitors. (*See* D.I. 95A, Ex. 29 at 2.) It also contends that the offset and xerographical copies of the Brochure constitutes printed publications despite acknowledging that it is not certain of the number of copies which were distributed at the trade shows. (D.I. 95 at 34.) It argues that the number of copies that were distributed are not determinative because the criterion is "the accessibility to at least the pertinent part of the public, of a perceptible description of the invention, in whatever form it may have been recorded." (D.I. 95 at 34 *quoting Wyer, supra,* at 226.)

Kysor relies upon *Universal Athletic Sales Co. v. American Gym, Recreational &*

*Athletic Equipment Corp.,* 546 F.2d 530 (C.A. 3, 1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and Electronics Industries, Inc.,* 450 F.2d 1164 (C.A. 3, 1971); and *I.C.E. Corp. v. Armco Steel Corp.,* 250 F.Supp. 738 (S.D.N.Y.1966), to support its proposition that the photoprint panels, the written description thereof and the offset and xerographical copies of the Brochure are "printed publications" under Section 102(b). In *Universal,* the defendants asserted that the plaintiff's claims were void for obviousness because they were anticipated by prior art and relied upon a photograph which had appeared in a magazine. The Court of Appeals for the Third Circuit upheld the district court's finding that a photograph in itself constitutes a "printed publication" stating "[w]ith a photograph, one conversant in a pertinent art could make or construct a purported invention without resorting either to the patent or to his own inventive skills. *Under certain circumstances,* then, a photograph may so anticipate a patent to render it invalid." 546 F.2d at 543 (emphasis added).

In *Philips, supra,* 450 F.2d 1164, the district court after trial found that microfilm was a prior printed publication because sufficient proof existed as to its accessibility and dissemination to those people skilled in the art. The Court of Appeals for the Third Circuit affirmed this finding and stressed that "[w]hether or not an individual microfilm is a 'printed publication' within the meaning of the statute *is a question of fact* which ought to be determined by the application of criteria consonant with modern day methods of printing, duplicating and disseminating documents." *Id.* at 1170 (emphasis in original).

In *I.C.E., supra,* 250 F.Supp. 738, the plaintiff's motion for summary judgment was denied because the district court found three basic questions which were "at least in substantial part questions of fact." *Id.* at 739. Specifically, the court found that the most interesting question was whether a patent application on microfilm was a

"printed publication" within the meaning of Section 102(b). The court undertook a careful examination of the genesis of the term "printed publication" and found that the microfilm could be a printed publication only *if the facts indicated* that the microfilm had been sufficiently accessible and disseminated. *Id.* at 739, 742–43.

■ The Court finds that the cases cited by Kysor support the proposition that the photoprint panels, the written description thereof and the offset and xerographical copies of the Brochure could be printed publications. These cases, however, also make clear that as a general rule the determination of whether materials are printed publications is a mixed question of law and fact which can be determined only after trial. This conclusion is further supported by *In re Wyer*, 655 F.2d 221 (Cust. & Pat. App.1981), and *Regents of University of California v. Howmedica, Inc.*, 530 F.Supp. 846 (D.N.J.1981). In *Wyer*,[1] the Court of Customs and Patent Appeals also made clear that "the questions to be examined under § 102(b) is accessibility to at least the pertinent part of the public" and that this determination involves factual inquiries. *Id.* at 226. Further, the Court stated that while the intent to disseminate the information by producing a large number of copies "may aid in determining whether an item may be termed a 'printed publication'," such method of disseminating "is not always conclusive nor requisite. Each case must be decided on the basis of its own facts." *Id.* at 227.

In *Howmedica, supra*, 530 F.Supp. 846, the defendant claimed that the plaintiff's patent was invalid under Section 102(b) because a description of the invention was contained in certain "printed publications" prior to the "critical date." The method by which the invention allegedly had been disseminated was at a lecture which had been attended by approximately thirty persons.

At the lecture, certain slides were projected on a screen which allegedly detailed the invention. Although the court recognized that slides could constitute "printed publications," the court found after trial, that "the projections of the slides at the lecture could not disclose the invention to the extent necessary to enable a person of ordinary skill in the art to make or use the invention." Further, it stated that it was "important to note that the public did not have access to the slides prior to the critical date, and that no prints of the slides were made prior to said date." *Id.* at 860. The court thus concluded that the slides were not sufficiently "disseminated or otherwise made available to the extent that persons interested in the information could locate it and put to use the essentials of the claim invention." *Id.*

*Wyer* and *Howmedica*, as well as *Universal*, *Philips*, and *I.C.E.*, demonstrate that the determination of whether certain materials are "printed publications" under Section 102(b) is a mixed question of fact and law and, in general, is not subject to summary judgment. Although situations may exist where there is no genuine issue of material fact with respect to this determination, this is not one of those situations. The Court finds, after an in-depth review of the record, that genuine issues of fact exist. For example, the record does not show how many persons attended the Fuji exhibits, viewed the photoprint panels, *and* received a copy of the Brochure. Therefore, the Court concludes that summary judgment is inappropriate on the issue of whether the Subera patents are invalid on the grounds that the subject matter of the patents was described in a printed publication more than one year before the filing date of April 25, 1977.[2]

THE AOKAGE PATENT

■ Kysor also contends that the Subera patents are invalid as a matter of law under

---

1. *Wyer* is particularly appropriate because the United States Court of Appeals for the Federal Circuit has stated in *South Corp. v. United States*, 690 F.2d 1368 (C.A.F.C.1982), that it has adopted precedents established by the Court of Claims and Court of Customs and Patent Appeals.

2. Although the Court is inclined to find that the photoprint panels, the written description thereof, and the Brochure depict the maintenance of an air curtain across the open front of the refrigerator case during the defrost cycle, it will not make such a determination at this time

Sections 282 and 102(b) because the subject matter was anticipated by the Aokage patent. Tyler disagrees with Kysor's contentions. The parties do agree, however, that the Aokage patent discloses two reverse flow air defrost embodiments for an open front refrigerated display case and that during the refrigerated cycle, two air curtains are circulated in a conventional fashion to flow across the open front and around the refrigerated case. The dispute between the parties exists as to the operation of the display case during the defrost cycle. Kysor contends that the Aokage patent *inherently* teaches that during the first defrost embodiment, the air flow in the inner duct is reversed so that it no longer forms an air curtain across the front of the case, while the air flow in the outer secondary duct is maintained in the normal direction, thereby sustaining an air curtain. In the second defrost embodiment, Kysor maintains that the Aokage patent *inherently* teaches that the air flow in the outer secondary duct is maintained in the normal direction, thereby creating an air curtain. (D.I. 95A, Ex. 17, 18.) Tyler's expert, however, contends that the Aokage patent does not inherently teach the maintenance of an air curtain during the defrost cycle, but that the Subera patents expressly teach the maintenance of an air curtain during the defrost cycle. (D.I. 100, ¶ 12.) Thus, the Court finds that genuine issues of fact exist as to what the Aokage patent teaches. Accordingly, it cannot grant Kysor's motion for summary judgment with respect to the question whether the subject matter of the Subera patents were anticipated by the Aokage patent.

An order will be entered in accordance with this memorandum opinion.

because a question exists with respect to the accessibility and dissemination of these materi-

