# United States Court of Appeals for the Federal Circuit

2005-1412

MARK BRUCKELMYER,

Plaintiff-Appellant,

v.

GROUND HEATERS, INC.,

Defendant,

and

T.H.E. MACHINE COMPANY,

Defendant-Appellee.

John B. Lunseth II, Briggs and Morgan, P.A., of Minneapolis, Minnesota, filed a combined petition for panel rehearing and rehearing en banc for plaintiff-appellant. With him on the petition was Michael H. Streater.

Aaron W. Davis, Patterson, Thuente, Skaar & Christensen, P.A., of Minneapolis, Minnesota, filed a response to the petition for defendant-appellee. With him on the response were Randall T. Skaar and Eric H. Chadwick.

James Moskal, Warner, Norcross & Judd LLP, of Grand Rapids, Michigan, for defendant. Of counsel was Charles E. Burpee.

Appealed from: United States District Court for the District of Minnesota

Judge Donovan W. Frank

# United States Court of Appeals for the Federal Circuit

2005-1412

MARK BRUCKELMYER,

Plaintiff-Appellant,

v.

GROUND HEATERS, INC.,

Defendant,

and

T.H.E. MACHINE COMPANY,

Defendant-Appellee.

ON PETITION FOR PANEL REHEARING
AND REHEARING EN BANC

Before MICHEL, <u>Chief Judge</u>, NEWMAN, MAYER, LOURIE, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST, <u>Circuit Judges</u>.

<u>O R D E R</u>

A combined petition for panel rehearing and rehearing en banc was filed by the Appellant, and a response thereto was invited by the court and filed by the Appellee. The petition for rehearing was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc and response were referred to the circuit judges who are authorized to request a poll whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1)  The petition for panel rehearing is denied.

(2)  The petition for rehearing en banc is denied.

(3) The mandate of the court will issue on July 5, 2006.

NEWMAN, <u>Circuit Judge</u>, dissents in a separate opinion, in which LINN, <u>Circuit Judge</u>, joins.

FOR THE COURT

<u>Jun 28 2006</u>
      Date

<u>s/Jan Horbaly</u>
Jan Horbaly
Clerk

cc:    John B. Lunseth, II, Esq.
       James Moskal, Esq.
       Randall T. Skaar, Esq.

2005-1412          2

# United States Court of Appeals for the Federal Circuit

05-1412

MARK BRUCKELMYER,

Plaintiff-Appellant,

v.

GROUND HEATERS, INC.,

Defendant-Appellee,

and

T.H.E. MACHINE COMPANY,

Defendant-Appellee.

NEWMAN, <u>Circuit Judge</u>, with whom LINN, <u>Circuit Judge</u>, joins, dissenting from denial of the petition for rehearing *en banc*.

The facts are not in dispute. The '085 and '301 patents were held invalid because of the existence of two drawings that were stored in the unpublished archive of an unrelated Canadian patent application by a different inventor. The drawings were cancelled from the Canadian application before the patent was granted, and are not referred to in the published Canadian patent. It is undisputed that these cancelled drawings are not available in any database or any library, and that no index, no catalog, no abstract suggests their existence or their content. It is not contested that the only way to obtain these drawings (although their existence was unknown) is to personally go to the Canadian Patent Office in

Hull, Quebec, and ask to examine the file wrapper (the prosecution history) of this particular patent, which is entitled "Portable Construction Heating System". This is not the method for heating frozen ground in preparation for pouring concrete, which is the subject of the patent in suit. The only lead to this particular Canadian prosecution record, we are told, is to observe that the broad recitation in the Canadian patent that "other typical uses [of the invention] are . . . thawing frozen ground," and then to travel to Quebec to examine the file wrapper to see if it might contain information that was deleted from the Canadian application before issuance. This excised and unpublished and unreferenced material is not a "printed publication," no matter how generously that concept is defined. This court improperly relies on it to invalidate the United States Patents here at issue.

The patent act carefully distinguishes "prior art" in the United States and in foreign countries. The relevant portions of section 102 are:

§102. A person shall be entitled to a patent unless --

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . .

Note the statute's distinction between "knowledge" or "use" in this country, on one hand, and "patented or described in a printed publication in a foreign country." Foreign knowledge is not prior art unless it is patented or published. Our predecessor court has explained the reason for the difference:

It is to be noted that a "printed publication" may be an effective bar to the granting of a patent if it is "in this or a foreign country." 35 U.S.C. 102(a, b).

For knowledge or use of the invention to be a statutory bar, however, it must be "in this country." 35 U.S.C. 102(a). The patent act of 1836 made the same distinction. Act of July 4, 1836, c. 357, 15, 5 Stat. 123. Bearing in mind the basic nature of the patent grant, as heretofore discussed, it becomes readily evident that what Congress was concerned with, both in 1836 and 1952, was the probability that the subject matter would be made known to the American public. Knowledge and use in the United States would probably (or so Congress must have reasoned) come to the attention of the American people whereas the same probability would not be present with respect to such knowledge and use abroad. By the same token, in the case of 'printed' publications, Congress no doubt reasoned that one would not go to the trouble of printing a given description of a thing unless it was desired to print a number of copies of it.

. . . .

Printing alone, of course, would be insufficient to reasonably assure that the public would have access to the work, for the possibility always exists that the printed matter may be suppressed and might never reach the public. Then too, there are time lapses between the printing and the publishing of a given work, and the public is not to be charged with knowledge of a subject until such time as it is available to it. For this reason, it is required that the description not only be printed but be published as well.

But though the law has in mind the probability of public knowledge of the contents of the publication, the law does not go further and require that the probability must have become an actuality. In other words, once it has been established that the item has been both printed and published, it is not necessary to further show that any given number of people actually saw it or that any specific number of copies have been circulated. The law sets up a conclusive presumption to the effect that the public has knowledge of the publication when a single printed copy is proved to have been so published.

In re Tenney, 254 F.2d 619, 626-27 (CCPA 1958) (footnotes and citations omitted).

The earlier cases decided by the CCPA interpreted "printed" as Congress no doubt understood the term: multiple copies that were made in order to disseminate the information. The idea was that there must be some likelihood that the information would, at least in principle, be available to interested persons in the United States. We need not consider the role in section 102 of today's searchable electronic data bases and other media, for in this case the subject matter entered no searchable library. The policy

consideration for foreign prior art remains the same as when the statute was enacted -- a requirement that the information be reasonably available in this country. The decisions developed the criterion that a "publication" must be "publicly accessible," as in In re Wyer, 655 F.2d 221, 226 (CCPA 1981), where the court defined "publicly accessible" as meaning "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." In Wyer, upon which the panel majority relies, the information was indeed accessible, for it had been "laid open to public inspection" accompanied by routine classification and published abstract:

> Appellant filed an application for an Australian patent which resulted in copies of that application being classified and laid open to public inspection at the Australian Patent Office and each of its five "sub-offices" over one year before he filed his application in the United States. Appellant himself informs us that:
>
>> Equipment was available to the public in the Patent Office and in the sub-offices for providing an enlarged reproduction of the diazo copies on a display screen. Equipment was also available for producing enlarged paper copies for purchase by the public. Moreover, diazo copies were also available for sale to the public upon application to the Australian Patent Office, these latter diazo copies being produced to order from the second microfilm copy . . . ,
>
> Even though no fact appears in the agreed statement respecting actual viewing or dissemination of any copy of the application, there is no dispute that the records were maintained for this purpose. Given that there is also no genuine issue as to whether the application was properly classified, indexed, or abstracted, we are convinced that the contents of the application were sufficiently accessible to the public and to persons skilled in the pertinent art to qualify as a "printed publication," notwithstanding those cases holding that a foreign patent application laid open for public inspection is not a printed publication.

Id. at 226-27. In contrast, the drawings in the Canadian patent application were not available in multiple locations, could not be ordered from the Canadian patent office, were not indexed or cataloged, and their presence cannot be divined from the Canadian patent that eventually issued. As Judge Linn observes in his dissent, a person searching for prior art cannot be reasonably expected to look in the prosecution history of a foreign patent that does not disclose the invention, on the off chance that its inventor might have invented something relevant to the search, and then cancelled it from the application before grant.

In In re Cronyn, 890 F.2d 1158, 1160 (Fed. Cir. 1989), this court explained that "The statutory phrase 'printed publication' has been interpreted to mean that before the critical date the reference must have been sufficiently accessible to the public interested in the art; dissemination and public accessibility are the keys to the legal determination whether a prior art reference was 'published.'" (quoting Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1568 (Fed. Cir. 1988)). In In re Klopfenstein, 380 F.3d 1345 (Fed. Cir. 2004) this court stated that "the appellants' argument that 'distribution and/or indexing' are the key components to a 'printed publication' inquiry fails to properly reflect what our precedent stands for," explaining that what precedent stands for is that "printed publication" means reasonably accessible through generally available media that serve to disseminate information. Id. at 1348. The present case applies a standard unsupported by any precedent. We should maintain a consistent and reliable standard of what constitutes a "printed publication." To this end I would re-hear this case *en banc*.