BANQUE WORMS, S.A., Plaintiff,

v.

MESSRS. WORMS ET CIE, Banque Worms Et Cie. (Suisse), S.A., Jean Sevaux, Marc De La Fosse, Providence International Limited and Don F. Gaston, Defendants.

No. 86 Civ. 7879 (WCC).

United States District Court, S.D. New York.

June 11, 1987.

Hughes Hubbard & Reed, New York City (George A. Davidson, Jeff H. Galloway and Joan R. Salzman, of counsel), for plaintiff.

Davis Polk & Wardwell, New York City (John P. Cooney, Jr., Lisa A. Huestis and Elizabeth Glaser, of counsel), for defendants Messrs. Worms et Cie. and Banque Worms et Cie. (Suisse), S.A.

Grand & Ostrow, New York City (Paul R. Grand and Diana Parker, of counsel), for defendants Jean Sevaux and Marc De La Fosse.

Curtis, Mallet, Prevost, Colt & Mosley, New York City (Peter E. Fleming, Jr., Eliot Lauer, Mark H. O'Donoghue and Daniel R. Lenihan, of counsel), for defendants Providence Intern. Ltd. and Don F. Gaston.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Banque Worms, S.A. ("Banque Worms"), is a French bank with a federally chartered

branch in New York. In early 1982, Banque Worms was nationalized by the Republic of France. Prior to its nationalization, Banque Worms was controlled and slightly less than 50 percent owned by defendant Messrs. Worms & Cie. ("Worms & Cie."), a French partnership. Approximately 25 percent of Banque Worms' stock was held by three non-French financial companies, and approximately 25 percent was publicly held.

The complaint alleges a conspiracy by Worms & Cie. and the other defendants to divert corporate assets and opportunities from Banque Worms to the Worms Group, as the group of affiliated companies headed by Worms & Cie. is known. This scheme was allegedly accomplished through fraud, mail fraud, wire fraud, bribery and a pattern of racketeering activity and in breach of the participants' fiduciary and statutory duties. There are three transactions which are the subject of this lawsuit: (1) the Providence Capital transaction in 1982; (2) the Manhasset Office Group transaction in May 1983; (3) the Olde Salem transaction in 1981. Plaintiff maintains specifically that banking fees generated by these loans or certain investment opportunities which arose from the underlying transactions were improperly diverted from plaintiff, prior to its nationalization, to one or more of the defendants.

Defendants have moved to disqualify Hughes, Hubbard and Reed ("HHR") from representing plaintiff in this action. Defendants have also moved to dismiss the complaint on various grounds. Plaintiff, in turn, has moved to amend its complaint if the Court believes that an amended complaint is necessary. For the reasons outlined below, defendants' motion to disqualify HHR is denied at this time. The Court will reserve judgment on defendants' motions to dismiss, and may modify its decision on the motion to disqualify, after review of plaintiff's amended complaint.

*Motion to Disqualify Hughes, Hubbard and Reed*

Defendants have moved to disqualify HHR from representing plaintiff in this action due to HHR's representation of defendant Worms Geneva in the Olde Salem Ltd. loan, a subject of this lawsuit. According to the Complaint, in late 1981, Olde Salem, Ltd. sought funds to provide additional construction financing and working capital to complete the conversion of a Virginia housing complex to condominiums. Subject to various agreements, Worms Geneva agreed to provide a loan and the New York branch of Banque Worms (BWNY) agreed to participate in that loan.

Plaintiff specifically alleges that the documents prepared to effect this loan were the vehicle by which it was defrauded. According to plaintiff, while BWNY originated the loan, negotiated the loan, administered the loan, provided all of the funds, and took most of the risk, defendants de la Fosse and Sevaux, with others referred to in the complaint as Disloyal Representatives, allegedly arranged for the documentation to be changed before execution to give virtually all of the reward to Worms Geneva.

Banque Worms identifies three documents that it alleges were changed to defraud it: (1) the Origination and Management Agreement which granted Worms Geneva a fee of $1,250,000 at closing plus a 25 percent share of net profits payable after all condominium units were sold; (2) the Loan Agreement which allegedly was changed from recourse to nonrecourse and eliminated personal guarantees and the right of set-off; and, (3) the Participation Agreement which, *inter alia*, allegedly deprived Banque Worms of "standard protections" including compensation for increased funding costs resulting from supervening regulatory requirements.

Finally, Banque Worms alleges that these documents were used to hide the true facts. The essence of plaintiff's "fraudulent concealment" allegations are:

> The representations in the Olde Salem Loan documents ... were fraudulent and were intended to conceal from Banque Worms the true facts. This fraudulent concealment misled Banque Worms and substantially delayed it from discovering the true facts.

According to defendants, HHR took instructions from Worms Geneva during the Olde Salem transaction; it drafted the documents now characterized in the complaint as fraudulent and lacking the "standard protections"; it continued to represent Worms Geneva on the Olde Salem transaction after the loan was made. While the borrower paid HHR's bills on the original loan, HHR billed Worms Geneva for its post-closing services.

Therefore, according to defendants, HHR is proscribed from proceeding against its former client:

1. by Canon 4—because of the former attorney-client relationship between HHR and Worms Geneva, because HHR acted for Worms Geneva on the very loan transaction which is a subject of this lawsuit, and because the presumption in law and the allegations in the complaint establish that confidential information could have been involved in that relationship.

2. by Canon 5—because HHR's attorneys could be important witnesses both on the merits and the statute of limitations issues in this case; and,

3. by Canon 9—because to allow HHR to continue would appear to disregard the conflict in the interests of its present and former clients and to be driven by its own interest in avoiding being identified as one of the plaintiff's unnamed "Disloyal Representatives."

## A. *Disqualification Under Canon 4*

Worms Geneva seeks to disqualify HHR on the ground that HHR represented Worms Geneva in the Olde Salem transaction. Based on the affidavits submitted, however, it is clear that HHR was retained by Banque Worms, dealt exclusively With Banque Worms directly, sent all bills to Banque Worms in the first instance, and was paid over 97 percent of its fees by Banque Worms. Further, HHR never communicated directly with Worms Geneva. In the case at bar, HHR represents the same party it represented in Olde Salem. Further, even though HHR also represented Worms Geneva on the Olde Salem trans-

action, it is undisputed that Worms Geneva communicated with HHR only through Banque Worms. Given that fact, the Second Circuit's decision is *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977), is controlling and defendants' motion in reliance on Canon 4 must be denied.

In *Allegaert*, the Court of Appeals held that unless an attorney had been in a position to have received information from the former client which the former client would have expected him to keep secret from the present client, there could be no disqualification even if the subject of the present and former representations were substantially related:

before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client.

*Allegaert*, 565 F.2d at 250.

In *Allegaert*, duPont Walston ("Walston") and duPont Glore Forgan ("Glore Forgan") had been parties to an agreement resembling a joint venture. Walston had retained as its counsel in a litigation a law firm which had a preexisting attorney-client relationship with Glore Forgan. Later, Walston's bankruptcy trustee sued Glore Forgan in a substantially related case, and Glore Forgan retained the same attorney that had represented Walston. The bankruptcy trustee, standing in Walston's shoes, moved to disqualify. The Second Circuit ruled that since Walston had known that information it disclosed to the law firm would, in view of the joint venture agreement between Walston and Glore Forgan, be conveyed by the law firm to Glore Forgan, the substantial relationship test had no application and disqualification was not warranted.

Here, according to plaintiff, the case for application of the *Allegaert* rule is even stronger than it was in *Allegaert* itself. Worms Geneva could not possibly have had any expectation that HHR would keep information confidential from Banque

Worms when HHR's only source for that information was Banque Worms itself.

In *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 n. 7 (S.D.N.Y.1985), Judge Leisure described the *Allegaert* holding in these terms:

> In *Allegaert*, the Second Circuit held that for a disqualification motion to succeed, the movant must demonstrate that the subject attorney was in a position to receive confidences that the movant would expect would not be disclosed to the attorney's present client. This element becomes an issue especially in case where a partnership, joint venture or other cooperative effort breaks up, or where two former co-parties to a litigation later sue each other. If counsel for the combined effort then represents one of the former co-venturers in the ensuing litigation, his adversary might move to disqualify him because of his receipt of confidences. . . . . In *Allegaert* the Second Circuit held that such motions must fail.

*United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 n. 7 (S.D.N.Y.1985).

Defendants counter this argument by claiming that this case is distinguishable in that in *Allegaert* both parties knew, at the time of the prior representation, that the law firm had no information unavailable to either party. Here, however, the central thesis of the complaint concerning the Olde Salem loan is that information concerning the Olde Salem loan was fraudulently withheld by the defendants, including Marc de la Fosse, from the plaintiff. In the complaint, Banque Worms contends that certain BWNY employees were "wearing two hats" and were in fact agents of Worms Geneva. Mr. Rzonca appears to be one of the unnamed "Disloyal Representatives" (Complaint, Paras. 12, 32) and Mr. De La Fosse is named as a defendant in this lawsuit precisely because of his alleged actions as a "Disloyal Representative" (Complaint, Paras. 6, 12). Under its allegations, these "Disloyal Representatives" were "using their power to control the activities of BWNY ... [t]o misappropriate, convert, and divert to the Worms Group or themselves Banque Worms' assets and business opportunities," "[t]o cause Banque Worms to enter into improvident transactions to provide profit for the Worms Group," and "[t]o use Banque Worms' assets and credit to profit the Worms Group." (Complaint, para. 12).

This argument by Worms Geneva is unpersuasive. Clearly, if HHR had discovered the alleged fraud by Worms Geneva, one of its clients during the Olde Salem transaction, while HHR was drafting the relevant loan agreements in 1981, HHR would have had an obligation at that time to alert Banque Worms, its other client in that transaction. The fact that this fraud has allegedly not been discovered until now does not mean that HHR cannot represent Banque Worms, its client during the Olde Salem transaction and its current client, in this lawsuit. Worms Geneva was fully aware that HHR was serving as Banque Worms' attorney at all relevant times, and therefore Worms Geneva cannot claim that HHR was made privy to any information which Worms Geneva expected would be withheld, either during the transaction or now, from Banque Worms.

### B.  *Disqualification Under Canon 5*

A party seeking disqualification pursuant to Canon 5 must show that it is "obvious" that the lawyer "ought" to be called as a witness DR 5–101(A). As the court in *SMI Industries Canada Ltd. v. Caelter Industries, Inc.*, 586 F.Supp. 808, 817 (N.D.N.Y. 1984), observed,

> The phrase "ought to be called as a witness" has been narrowly construed to refer to an attorney "who has crucial information in his possession which must be divulged" in the course of a trial. *Universal Athletic Sales Co. v. American Gym Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539 n. 21 (3d Cir.1976), *cert. denied*, 430 U.S. 984 [97 S.Ct. 1681, 52 L.Ed.2d 378] (1977).

Given the reasoning which HHR employed in arguing that it should not be disqualified under Canon 4, it is now difficult for HHR to maintain that it should not be disqualified under Canon 5, given the

facts of this case. In its arguments in opposition to disqualification under Canon 4, HHR claimed that since Worms Geneva was aware that HHR represented Banque Worms throughout the entire Olde Salem transaction, it was not possible for Worms Geneva to claim that HHR was privy to any information which it was expected to conceal from Banque Worms. Indeed, Worms Geneva could expect that all information which HHR received would be communicated to Banque Worms.

In an attempt to avoid a limitations bar under RICO, however, Banque Worms alleges that the "true facts" of the transaction were fraudulently concealed by Worms Geneva and therefore the limitations period should be tolled during that time. Although HHR claims that it did not draft the Origination and Management Agreement, it does not deny that it had knowledge of the terms of that agreement. Mr. Kreitzman of HHR merely states that HHR did not have knowledge of the terms of the Management and Origination Agreement "prior to execution." Even knowledge on the part of HHR at the time of execution of the Agreement, however, would be relevant to Banque Worms' claim of fraudulent concealment. If HHR did have knowledge of the Agreement, then clearly HHR's testimony on how its client, Banque Worms, was fraudulently prevented from discovering the "true facts" of the Olde Salem transaction, so that the limitations period should be tolled, would be critical to the viability of the claim.

Clearly, HHR cannot have it both ways absent testimony from the HHR attorneys involved in the transaction which could explain the apparent contradiction. On the other hand, HHR argues that Worms Geneva was aware that HHR would transmit to Banque Worms, its client during the Olde Salem loan, any alleged confidential aspects of the transaction. Accordingly, HHR maintains, it cannot be disqualified under Canon 4. On the other hand, HHR seems to maintain that although it may have been aware of the "true facts" of the transaction, its client Banque Worms should be excused for its failure to bring this lawsuit in a timely fashion under the RICO statute since Worms Geneva fraudu-

lently hid these true facts from Banque Worms.

Clearly, the Court could not accept this second assertion, in light of HHR's first argument, without the testimony of attorneys from HHR who could verify for the Court the time at which HHR became aware of the "true facts" which were allegedly concealed from Worms Geneva, and explain why HHR did not inform Banque Worms, its client, of these facts earlier. Since it appears that it will be necessary to call attorneys from HHR as witnesses, it appears that they should be disqualified pursuant to Canon 5. The Court will reserve decision on this point, however, pending amendment of the complaint by plaintiff, which is authorized below. This amended complaint will necessarily provide the Court with further facts on which to base its decision.

*Permission to Amend Complaint*

█ In its submissions in opposition to the motion to dismiss the RICO claims, plaintiff maintains that its claims are not barred by the relevant statute of limitations since defendants' fraud and concealment prevented plaintiff from discovering the true facts surrounding the relevant transactions. Defendants, on the other hand, contend that plaintiff had full knowledge of the essential components of all of the transactions in question, and cannot now claim that any concealment on the part of defendants led to delay in bringing this lawsuit.

In the interests of justice, the Court will permit plaintiff to amend its complaint, pursuant to Rule 15(a), Fed.R.Civ.P., to include facts regarding the alleged fraudulent concealment by defendants which would justify tolling the limitations period under RICO. Plaintiff will have three weeks to file its amended complaint. The Court will reserve decision on defendants' remaining motions pending review of plaintiff's amended complaint.

So ordered.